## No. 9117.

### BETTIE SCOTT vs. MARY E. BRISCOE ET ALS.

None but creditors and forced heirs can attack the acts of an owner of property fraudulently alienating it.

Article 1754, Civil Code, is applicable only to spouses who have forced heirs; and though the nullity of donations, disguised or made to persons interposed, is absolute, in the sense that they are not reducible merely, but wholly null, it is only *relative* to forced heirs, and cannot be invoked by mere simple collateral heirs.

APPEAL from the Ninth District Court, Parish of Tensas, *Hough*, J.

*Julius Aroni* for Plaintiff and Appellant.

*E. D. White, J. W. Montgomery* and *Steele & Garrett* for Defendants and Appellees.

The opinion of the Court was delivered by

MANNING, J. The plaintiff is one of the nieces and legal heirs of William J. Briscoe, and sues his widow to annul her title to the Mound

plantation in Tensas for the causes set in Mrs. Upshur's suit just decided. Two other nieces of Briscoe, co-heirs with Mrs. Scott, refused to join her in the suit and are made defendants.

The sales and conveyances attacked in this suit have been annulled at the instance of Mrs. Upshur, a creditor of Briscoe. Nevertheless we have to pass upon the question raised here, whether the plaintiff, being a simple and not forced heir, can attack the acts of Briscoe by and through which his wife acquired her title. Numerous decisions confine the right of this attack to creditors and forced heirs. Druman v. Klenman, 31 Ann. 124; Stewart v. Mix, 30 Ann. 1036; Compton v. Maxwell, 33 Ann. 688; Brown v. Stroud, 34 Ann. 374; Kerwin v. Ins Co., 35 Ann. 33.

The judgment below recognised this settled rule and was in favour of the defendant, Mrs. Briscoe, rejecting the demand for annulment of her title at plaintiff's instance, but recognised Mrs. Scott as one of the legal heirs of Briscoe with right to open his succession in form.

Judgment affirmed.

## ON APPLICATION FOR REHEARING.

FENNER, J. Our original opinion rested on the question of estoppel, which logically primed and anticipated all other questions in the case.

It is conceded by plaintiff's counsel that the numerous authorities quoted therein, fully sustain the general proposition, that simple heirs cannot be heard to falsify authentic declarations of their ancestors or to attack titles solemnly granted or recognized by him.

But a learned and ingenious argument is presented to establish an exception to this general rule in the case of donations between husband and wife, disguised in the form of onerous contracts or made to persons interposed, on the ground that such donations are stricken with absolute nullity by article 1754 of the Civil Code.

It is claimed that the object of plaintiff's action is to show that the title to the property involved, was really acquired by Briscoe, and that he caused the same to be placed in the name of his wife, with the intention and effect of making to her a disguised donation.

It cannot be disputed, as a scientific proposition, that the result of an unqualified, absolute nullity, is to deprive the act of all effect whatever, to leave matters as if the act had not been done, and to open it to the attack of any person whatever, having the slightest interest.

Neither can it be denied that the French Court of Cassation, many of the ablest commentators upon the French code, and even this Court have, in general terms, declared that the nullity denounced by article

1754 (C. N., art. 1099) was absolute. 5 Toullier, No. 901; 1 Grenier, No. 691; 11 Dalloz, ch. 12, sec. 4, art. 3, No. 3; 4 Marcadé, p. 245; Journal du Palais, 30 Nov., 1831; Id. 27 May, 1838; Succ'n of Ames, 33 Ann. 1328; Casanova vs. Acosta, 1 La. 179; Thibodeaux vs. Herpin, 6 Ann. 673.

The case last cited, taken in connection with the first decision therein reported in 5 Ann. 578, will be found to rest on peculiar principles.

With this exception, the assertions of absolute nullity referred to, were generally made in cases brought by forced heirs or in discussions touching the question whether such prohibited donations were null in their entirety, or only reducible to the disposable portion; on which question the courts and commentators of France are almost equally divided, many holding that they were reducible merely. 9 Duranton No. 831; Coin-Delisle, p. 614; also, Paujol-Rodier-Devilleneuve; Journal du Palais, 21 June, 1837.

This Court, as will be seen by the authorities above quoted, has adopted the former view.

We feel no doubt, however, that the predication of absolute nullity is limited to the effect of the acts, and is not extended to the parties who may invoke it.

Whenever the question had been fairly presented, it has been uniformly held, so far as our diligent researches have extended, that the nullity referred to could not be invoked by mere simple, or collateral heirs. It came before the Court of Cassation in France as early as 1819, and the court disposed of it in these words:

"*La cour de Bordeaux a suivi les vrais principes du droit en décidant que l'article 1099 était étranger à un testateur qui ne laissait pas d'héritiers ayant droit à une réserve.*" Journal du Palais, 1st April, 1819.

Mourlon evidently takes the same view, for, after stating the doctrine of absolute nullity, he proceeds: "Comment les *héritiers réservataires* prouveront-ils l'interposition de personnes ?" obviously showing that he did not contemplate the possibility of other heirs having such right. 2 Mourlon, No. 1023.

Coin-Delisle, in discussing the general declaration of absolute nullity which had been made in certain decisions, adds: " Nous pensons bien que la jurisprudence abandonnera cette qualification de nullité *absolue*, pour dire que la nullité n'est que *relative* à la personne des héritiers à réserve, et déclarer toujours les collatéraux non-recevables." Coin-Delisle, p. 615, No. 16.

Aubry and Rau hold that the nullity attaches only when the prohibited donation is made with a view to commit a fraud upon the law by exceeding the disposable portion—whence it follows that when there are no forced heirs, and hence no limit to the power of disposition, the nullity does not apply.  7 Aubry and Rau, p. 276, note 24.

This view is enforced by an opinion of the Court of Cassation, saying: "Qu'il est de principe que les parties peuvent faire un choix entre plusieurs moyens d'atteindre leur but, lorsque ce but est licite en lui-même, qu'ainsi l'interposition de personnes n'est pas condamnable qu'autant qu'elle a pu couvrir une fraude à la loi."  Journal du Palais, 7 Feb. 1849.

Finally Laurent, after stating the entire nullity of such prohibited donations, says: "Il y a cependant une restriction qui résulte des termes de la loi.   Le premier alinéa suppose que les donations excèdent le disponible, c'est *en faveur des réservataires* qu'il établit la réduction des libéralités excessives; donc le second, qui prononce la nullité des donations dissimulées, doit être limité à la même hypothèse.   S'il n'y a pas des réservataires, la nullité n'a plus raison d'être.   C'est à dire que l'article 1099 ne s'applique aux donations que les époux se font pendant le mariage que dans le cas où ils ont des enfant."   He admits that French jurisprudence has derogated from this doctrine in so far as to hold that disguised or interposed donations between spouses, even when they have no forced heirs, may be revoked under the previous article 1096, (Art. 1749 of our code).   But as Briscoe died without revoking, no such question is presented here.  15 Laurent No. 408, p. 462.

It is to be observed that the decisions of the French courts recognizing the right of the spouse who has made a disguised donation himself to invoke its nulllity, rest upon C. N. Art. 1096, and not exclusively on Art. 1099 (our Code Arts. 1749 and 1754), and have no application to the case where the spouse has died without revoking and without forced heirs.   See specially Journal du Palais, 1873, January 22.

We have failed to find an authority recognizing such right in collateral heirs.

These authorities and the reasons upon which they rest satisfy us that the plaintiff in this case is without right to urge the nullity relied upon by her.

Briscoe had no children and no forced heirs.   There was no limit as to his power of disposition of his property, saving the rights of creditors.   He had the power to give to his wife all that he could give to a stranger.   C. C. Art. 1746.   He had the capacity to give to her, and she to receive from him, his whole estate, without, in any manner, infring-

ing the rights of this ordinary collateral heir. If it was his intention to give, it was a thing lawful in itself, operating no fraud upon any provision of the law, and he had the, right to select the mode of doing so. If he had received the title from Mrs. Gregory, and then donated it to his wife, neither plaintiff nor any one else, save creditors, would have had the right to complain. If, to avoid circuity, he had the title made directly to her, no law was violated and no injury done to plaintiff.

From this it follows that plaintiff does not bring herself within any exception to the rule of estoppel which bars her action.

We have not noticed the references made to Art, 2446, C. C., prohibiting sales between spouses save in certain cases; because, from no point of view, can this be regarded as a sale from Briscoe to his wife.

Rehearing refused.