### No. 11,394

### Orleans

---

### SUCCESSION OF MRS. MARY (OR MATTIE) BRADLEY, WIDOW OF JOHN N. SCHROEDEL

---

(May 21, 1928.  Opinion and Decree.)

---

(*Syllabus by the Court*)

1. Louisiana Digest—Action—Par. 12; Donations—Par. 20, 28; Successions—Par. 27.

Collateral heirs cannot maintain an action for the revocation of a donation inter vivos as a donation omnium bonorum in contravention of Art. 1497, R. C. C.

Appeal from Civil District Court, Division "B."  Hon. M. M. Boatner, Judge.

Succession of Mrs. Marty (or Mattie) Bradley, Widow of John M. Schroedel; opposition by niece.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Eberhard P. Deutsch, of New Orleans, attorney for administrator, appellee.

R. E. Milling, of New Orleans, attorney for defendant, appellant.

WESTERFIELD, J.   The Indianapolis Home for Aged Women sued Jefferson D. Matthews, administrator of the Succession of Mary (or Mattie) Bradley, widow of John N. Schroedel, to compel him to execute an act of sale of the following real estate belonging to the Succession of Mrs. Schroedel.

"Two certain lots of ground, situated and being in the City of New Orleans, described as lots Numbers forty-three (43) and forty-four (44) in square one hundred twenty-three (123) on the map of the New Orleans Land Company's land, the same in size and location to be in accordance with said map or plan of lots on file with the City Engineer of the City of New Orleans; said lots measure each twenty-five (25') feet front on Memphis Street by a depth of one hundred twenty-two and 75/100 (122.75') feet b. p. e. toward Vicksburg Street, in square bounded by Filmore and Ridgley Streets.

"Acq. C. O. B. 253, folio 39."

Mrs. Katherine Zimmerman, a niece who had acquired the interests of two other nieces, the three constituting the sole heirs at law of deceased, Mrs. Schroedel, intervened in the suit and claimed the property, as legal heirs.

The claim of plaintiff is based upon a

document executed by Mrs. Schroedel September 20, 1921, from which we quote the following:

"IN CONSIDERATION of having been admitted into THE INDIANAPOLIS HOME FOR AGED WOMEN as a permanent inmate, I, MRS. MARY SCHROEDEL, do hereby convey, assign, and transfer unto the said Home all the property, real and personal, which I now own, possess and am entitled to, or which at any time hereafter, while an inmate of said Home, I shall inherit or in any way become the owner of, including any and all equitable interests I may have or acquire in any such property. And this conveyance, transfer and assignment shall have the same force and effect as though all such property were specifically enumerated and described herein and a separate deed or assignment thereof were executed and delivered by me. And I do hereby further covenant and agree, upon request made, to execute any and all further deeds, assignments and transfers that the Home may think advisable, to complete its title, whether to property now owned by me or hereafter acquired by me, and in the event I may become the owner of any additional property of any kind, or of any equitable interest in any such property, while an inmate of said Home, I hereby covenant and agree to immediately give full information concerning the same to the Matron and President and the Board of Managers of said Home, and to then execute further deeds, assignments or transfers of said property to the Home, as may be requested by the Board of Trustees thereof."

Mrs. Schroedel was for four years an inmate of the Indianapolis Home and died there. It is apparent that she undertook to convey her property, perhaps without being aware that she possessed any to that institution in consideration for her support and maintenance, i. e., food, raiment, and shelter, for the remainder of her life. Such a transaction is denominated as onerous donation inter vivos.

"The lexieographers tell us that a dona-tion is a gift, and that a gift is something which is given freely and without consideration, but that is not altogether the law of this State. According to the Civil Code there are three kinds of donations, viz., gratuitous donation, the onerous donation and the remunerative donation; the first being the free gift defined by the lexieographers; the second being a gift burdened with charges imposed by the donor, and the third being a gift the object of which is to recompense for services rendered. Civ. Code Art. 1523. * * *

"Whilst, therefore, the onerous donation is a contract which imposes reciprocal obligations upon the parties and in which what is given, done, or promised by one person, may in some instances be considered as equivalent to, or a consideration for what is done, given or promised by the other, it is nevertheless a donation within the terminology of the law, and is governed by the rules applicable to donations." But, see Theilman vs. Cahlman, 119 La. 350.

Intervenor attacks this donation upon the following grounds:

First. It was not executed by authentic act as required by R. C. C. 1536.

Second. It was not registered as required by R. C. C. 1554, 1555, 1556, 1557.

Third. It was a donation omnium bonorum in contravention of a prohibitory law, R. C. C. 1497.

Fourth. It was void because lacking in description. Pargous vs. Page, 12 La. Ann. 612; Green Bros. vs. Witherspoon, 37 La. Ann. 751.

Plaintiff, in reply, points to Article 1504, R. C. C., which reads:

"On the death of the donor or testator, the reduction of the donation, whether inter vivos or mortis causa, can be sued for only by forced heirs, or by their heirs or assigns; neither the donees, legatees nor creditors of the deceased can require that reduction nor avail themselves of it."

We will consider the capacity of inter-

venor to maintain the suit before taking up any points raised in her behalf, for reasons which are perfectly obvious.

In Bernard vs. Noel, 45 La. Ann. 1135, 13 So. 737, it was held:

"The nullity declared by Art. 1487 of the Civil Code is absolute only relatively to the particular persons for whose special interest it was passed and among these can not be classed her collateral heirs invoking it when she has not done so herself. Scott vs. Briscoe, 37 La. Ann. 178." In Thielman vs. Gahlman, 119 La. 350, 44 So. 123, it was said:
" 'If they are collateral heirs, as has been assumed in the argument they have no standing to attack the contract made by him for fraud, as simulated or as a donation made in violation of Civil Code, Art. 1497.' "

See also Grandchampt vs. Billis, 121 La. 340, 46 So. 348, and Succession of Dessina, 123 La. 468, 49 So. 23, and Waller vs. Colvin, 151 La. 765, 92 So. 328.

Our conclusions are that intervenor, the niece of the deceased, is without capacity to maintain her opposition and that the plaintiff must prevail. The judge a quo, in giving judgment as prayed for, reached the same result.

The judgment appealed from is affirmed.