## FRANKLIN SHAW *v.* JAMES GANDOLFO & CO.

FACTS—Partnership in an adventure.

A PPEAL from the Fourth District Court of New Orleans, *Reynolds*, J.— *Benjamin & Micou*, for plaintiff. *B. J. Sage*, for defendants and appellants.

VOORHIES, J. (BUCHANAN, J., and OGDEN, J., concurring.) The plaintiff seeks to recover of the defendants the sum of $4095 43, as one-half of the loss which, he alleges, resulted from a mercantile adventure, founded on the following instrument, viz:

"NEW ORLEANS, May 6th, 1850.

*F. Shaw, Esq.* New Orleans,

Dear Sir: We acknowledge the receipt, on consignment and for sale on your account, of six hundred and fifty bales 4-4 bro. sheetings, as per marks and numbers at foot, under the following terms and conditions, viz:

We agree to sell said goods for which you have advanced the cost, in cash, whenever you and ourselves think best. You are to get them insured at good offices in this city, for the benefit of whom it may concern, the cost of which to be charged to the goods.

We agree not to charge any commission for purchasing or selling, and to allow you six per cent. interest per annum for your money, advanced, out of the proceeds of said goods. The profit or loss which may result from this operation, to be equally divided.

JAMES GANDOLFO & Co."

"Bought of *F. H. Petitpan*,

| | | | |
|---|---|---|---|
| LMC 150 bales 4-4 Laurence bro. sheetings, 115,920 yds. at 7½c. | $8,694 00 | | |
| AC 200 do. 4-4 Appleton bro. sheetings, 150,765¼ at 7½c. | - | 11,307 39 | |

Bought of *Whiting, Wright & Co.*

| | | | |
|---|---|---|---|
| LMC 170 bales 4-4 Laurence bro. sheetings, | - | 131,491.3 | |
| AC 130 do.  do. Appleton, | - | - | 98,224.1 |

229,716.0 yds.

| | | | |
|---|---|---|---|
| 229,716.0 yds. at 7⅜c. | - - - - | $16,941 55 | |
| Less ⅛c. per yd. on 5 bales bagging stained, | - | 19 26 | 16,922 29 |

36,923 68."

In support of his demand, the plaintiff relies on this instrument and the testimony of *Amos Horn.* The substance of the testimony of this witness is, that the parties being unable to find sales in New Orleans, Dr. *Shaw*, and *Appleton*, one of the defendants, agreed to ship the goods to New York for sale; both engaged the freight of the goods; *Appleton* himself engaged the drayage, as he could procure it for a lower price than *Shaw.*

The consignment was made in the name of the plaintiff, to *Holbrook & Nelson*, of New York, and sold by them for his account. It is shown by the testimony of one of the consignees, that the goods were sold at the current rates, or full market value, in New York—the net proceeds of which amounted to the sum of $32,541 63. The alleged loss is the difference between this amount and that of the invoice of the goods, including interest and charges. The account made out between the parties, including interest to the 15th of December, 1850, by the witness, *Horn*, shows the exact amount of that difference. It is not shown, however, that the defendants ever had any knowledge of this account, approved it, or consented to pay any part of the loss thus stated. The record shows that the plaintiff introduced in evidence, two documents, purporting to be the original bills of the merchandize purchased of *F. H. Petitpan*, by the defendants, one dated the 3d and the other the 4th of May, 1850. But these documents do not appear to be either written or signed by *Petitpan*, and even if they were, we are uninformed as to the object of their introduction.

Under this state of facts, are the defendants liable?

Whether the agreement between the parties, evidenced by the written instrument, be considered as an agency, or as a partnership, *quoad* the particular transaction, we do not think it is necessary for us to determine.     8 N. S. 174. Viewed as a partnership, the aspect most favorable to the plaintiff, we think it is clear that the contract terminated by the shipment or consignment of the goods to *Holbrook & Nelson.* It is obvious that the consignment could not have been made under the same contract. How could the stipulation in relation to commissions on the contemplated sales in New Orleans, which were to have been considered by the parties as profits, be reconciled to the charge of commission against the defendants on the New York sales? If the parties intended to extend the agreement to the sales in New York, it seems to us that

5

SHAW
v.
GANDOLFO & Co.

this change necessarily superinduced the necessity of another agreement. In the absence of any other evidence, we do not think the mere consent of the defendants to the consignment, amounted to such an agreement; on the contrary, we infer from it, that it was the intention of the parties to abandon their contract.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be avoided and reversed, and that there be judgment in favor of the defendants, rejecting the plaintiffs demand, with costs in both Courts.

SLIDELL, C. J., (with whom concurred CAMPBLL, J.) dissenting—thought the original agreement clearly created a partnership in the adventure, and that the change in the place of sale from New Orleans to New York, to which change, according to their view of the evidence, the parties agreed, did not change the relations of plaintiff and defendants, as partners in the adventure.