J. P. WHITNEY & Co. v. JOHN GAUCHE.

Question of fact as to whether the damage to goods, was before, or after shipment.

APPEAL from the Sixth District Court, *Cotton*, J.
*Durant & Hornor*, for plaintiffs and appellants. *Dufour*, for defendant·

VOORHIES, J. The owners of the ship Express sued the defendants on a freight bill for the sum of $937 48. The latter in his answer admitted the correctness of the bill, but claimed a reduction of the sum of $124 87, as damage which occured to his goods on their transportation from Liverpool to New Orleans.

This deduction was allowed by the court below, and the plaintiffs appealed.

The record discloses that the goods, when delivered to the defendant and unpacked, were found damaged by salt water. One of the witnesses states that a great many articles of crockery, consisting of pitchers, jugs and candle-sticks, were broken; that the paper in which they were packed was wet with salt water; that the damage to which crockery is liable, when wet with salt water is, that the salt water tends to rot the straw, so that the articles become loose, and are destroyed by the least handling; and that crockery wet inside of the packages is always damaged. This testimony appears to be cor-roborated by several other witnesses. In regard to the question of damages to the goods, we think the proof is conclusive. The goods, according to the bill of lading, were shipped in good order and condition by *Thomas F. Ben-nett*, on board of the ship Express at Liverpool, on the 18th of July, 1854, to be delivered in like good order and condition to the defendant at New Orleans, " all and every the dangers and accidents of the sea and navigation of what-soever nature and kind excepted."

The damage to the goods having been established, the burden was then thrown on the plaintiffs to show, that it was occasioned by one of the perils from which they were exempted by the bill of lading. But such is not pre-tended to have been the case in this instance. The defence rests on the ground that the damage existed previous to the shipment of the goods. It is true that the acknowledgment of the master as to the condition of the goods, extended only to the external condition of the casks, excluding any implication as to their quantity, quality or condition, or whether properly packed or not in the casks, when received on board. Had the evidence laid a foundation for a reasonable inference, that the damage had occured previous to the shipment of the goods, it is clear that the burden would have been thrown on the defendant to rebut the inference. But we do not think that any such foundation has been laid. We are, therefore, bound to conclude that the damage was occasioned by the fault or negligence of the master of the vessel. This we think is in accordance with the doctrine announced in the cases of *Clark* v. *Barnwell*, and *Rich* v. *Lambut*, 12 Howard, 280 and 347, relied upon by the appellants.

It is, therefore, ordered and decreed, that the judgment below be affirmed with costs.

LEA, J. (with whom concurred SPOFFORD, J.) The evidence in this case shows that the crates containing the damaged goods were in apparent good

order (viz : externally) when delivered: that they were stowed in a part of the vessel where damage from leakage was impossible : that the hold was kept free of water, caused by ordinary leakage, by pumping regularly every night: that the stowage was good, and that the vessel shipped no water on the voyage. There was no stress of weather. To use the language of two of the witnesses, the vessel did not ship more than a bucket of water on the voyage; and lastly, it appears that no other goods except those shipped to plaintiff were delivered in a damaged condition. It is moreover shown that these goods came from the interior of England, that they were brought to Liverpool in canal boats.

There is but one circumstance tending to rebut the conclusion that it was physically impossible that these goods could have been damaged on board of the vessel, and that is the probability that they were damaged from dampness caused by salt water, which rotted the exterior packing of the goods. It is well known, however, and it has been judicially recognized as a geographical fact, that the river Mersey is filled with salt water, and that the tide ebbs and flows to a very great height. 2d Rob. 403.

If these goods came down the river Mersey it is more than probable that they were damaged in their transportation to Liverpool. Be this as it may, it appears to me to be a physical impossibility that the four damaged casks shipped to *Gauche* (*all of one mark*) should, under the circumstances, have sustained damage from salt water on the voyage, while all the other merchandize of which the cargo consisted, remained uninjured. It appears to me that the burden of proof incident to the acknowledgment in the bill of lading, which is conclusive only as to the external condition of the casks, has been shifted from the shoulders of the carrier to that of the shipper. 12 Howard 280, 547.