No. 1453.—LORIN CHAPMAN *v.* THE NEW ORLEANS, JACKSON AND GREAT NORTHERN RAILROAD COMPANY.

Where a railroad company engaged in the carrying trade as common carriers for hire receives and receipts for property to be transported to another point on the line of the road, the burden of excusing its non-delivery at the point designated falls on the company.

A judgment of the District Court not regular in form will be annulled on appeal, and such judgment as should have been rendered by the judge *a quo* will be pronounced by the Supreme Court.

APPEAL from the Fourth District Court of New Orleans. *Theard,* J. *Marr & Foute,* for plaintiff and appellee, *L. E. Simonds,* for defendants and appellants.

HOWE, J. The plaintiff sues to recover the value, at Jackson, Mississippi, of a shipment of sugar and molasses delivered to the defendants at Hammond Station, on the twenty-fifth April, 1863, to be transported by the latter to Jackson. The shipment of the goods is admitted and the non-delivery at the place of destination. It also appears that the freight money was paid by plaintiff to defendants at Tangipahoa, a few miles beyond the point of shipment. The defense is that "at or near Tangipahoa Station the progress of said merchandise was arrested by "Grierson's raid," and the same for security from devastation by Federal troops was stopped at said station, and by the impossibility of proceeding farther on the road in consequence of military orders as well as by destruction of the road. That while said merchandise was then and there at Tangipahoa the same was destroyed by a military force acting under orders of Colonel Dumontiel, of the Confederate army, and lost by a '*vis* major,' by circumstances beyond the power of defendants to prevent and without any fault on their part."

There was judgment for plaintiff for the sum of $1274 33 in gold or its equivalent in United States treasury notes with interest thereon from April 25, 1863, and defendants have appealed.

The reception of the property by defendants as carriers for hire imposed on them the burden of excusing its non-delivery, and the question whether the record establishes any legal excuse is mainly one of fact. The goods had apparently arrived as far as Tangipahoa on the twenty-

fifth of April, 1863. From that place to the point of destination they might have been carried in a few hours, the distance being about one hundred miles. They were there unloaded from the cars, placed on a platform, and about the sixteenth of May following destroyed, as a witness informs us, by "Confederate soldiers, citizens and negroes, who knocked in the heads of the sugar hogsheads and helped themselves and carried off as much as they could." The witness continues:

"Colonel Dumontiel left the same day, before the destruction, with a few soldiers, being chiefly if not entirely his staff. The Federal cavalry came into Tangipahoa in less than an hour after the destruction of the sugar, and they burned the depot and platform, and what sugar and molasses had not been taken off before they came was burned with the depot."

This cavalry appears to have been not Grierson's but a force that came up from New Orleans.

F. Dumontiel testifies that during April and up to the sixteenth of May, 1863, he was in command of the post of Tangipahoa, and saw sugar and molasses lying out at the depot there. He states that the road was cut by Grierson's force between Tangipahoa and Jackson about the latter part of April, and certainly prior to the first of May. He does not fix the date, nor does he confirm the plea that the goods were destroyed by his orders. He states that before the road was cut by Grierson he had orders not to permit private freight to be transported on the Jackson Railroad, and notified the railroad officers, or employes, at Tangipahoa of such military orders, but of these orders and that notification he does not fix the date.

We have been referred by defendants to a "pictorial history of the war" to show that the Jackson Railroad was cut by Grierson's force on the twenty-eighth of April, 1863. If we admit that the date can be fixed by such method, we fail to discover in this or in the other facts of the case that the defendants have established any sufficient excuse for the non-delivery of plaintiff's property. There is no proof whatever that the property was destroyed by orders of Colonel Dumontiel, and it is not necessary therefore to determine what effect such orders would have had in law, if given and obeyed. There is no proof when military orders were given to forbid the transportation of private freight over the Jackson road, and it is unnecessary therefore to consider what effect they would have had in law if they had been connected with the date when the goods arrived at Tangipahoa. Admitting that the road was cut by Grierson's raid on the twenty-eighth of April, 1863, we find that three days were available to the defendants to convey the property from Tangipahoa to Jackson, a journey of a few hours. The goods arrived at Tangipahoa on the twenty-fifth April, and the freight money was there paid by plaintiff to defendants; and the record does not disclose any reason sufficient in law to justify the unloading at that

station of the plaintiff's property and the exposure of it to the destruction which came some three weeks afterward.

The judgment would be in all respects affirmed if regular in form, and for the proper amount of interest. As it is admitted by plaintiff's counsel that the rights of his client would be satisfied by a judgment in lawful money for the sum fixed by the court as the value of the property, and as interest is due, not from the time of shipment but from judicial demand (5 Rob. 192), it is ordered and adjudged that the judgment appealed from be avoided and annulled, and that the plaintiff have judgment against defendants for the sum of twelve hundred and seventy-four dollars and thirty-three cents, with five per centum per annum interest from February 1, 1866, with costs of the lower court, and that the plaintiff pay the costs of the appeal.

Rehearing refused.