## No. 13,066.

GEORGE W. WEST vs. DOMINGO NEGROTTO, JR., ADMINISTRATOR.

### SYLLABUS.

The adjudication of property to the State at a sale made in enforcement of State taxes, does not cut off the city taxes upon the property, and when such property is afterward sold by the State, under Act No. 82, of 1884, the purchaser not only takes the property, *cum onere*, but is bound personally, under his bid, to pay the city taxes.

On his failure so to do, the city has the right to enforce the same and bid in the property.

If, at the expiration of the term for redemption, the city authorities transfer the property to a third person who brings a petitory action to recover the same, the purchaser from the State can not, while not contesting the city's title or proceedings, successfully defend the suit by collaterally attacking the authority of the city officials to transfer the property.

Defendant, in a petitory action, has the right to set up, as against plaintiff's demand, the existence of an outstanding title in a third person, but the outstanding title must be a valid, legal, subsisting title, better than that of the plaintiff.

Where an outstanding title in a third person is set up, and plaintiff produces a title from that person himself, defendant can not attack it for relative nullities, but it must stand until set aside by a proper proceeding, between the parties in interest themselves.

ON APPLICATION FOR REHEARING.

The sale of property by the State for the payment of her taxes vests. in the purchaser a title, legal on the face of the papers, unless it thereon appears. otherwise.

When the State sells property for taxes and the papers show a title *prima facie* legal, the purchaser, although after subsequent judicial investigation the title is found null, is not a possessor in bad faith if he is not guilty of fraud or deception of any kind. ·

The purchaser is entitled to his improvements placed on the property prior to the suit, also to taxes paid, and to possession of the property until the value of the same be paid to him.

The value of the improvements and the amount of defendant's claim not having been shown by sufficient evidence, the case is remanded to try and decide defendant's reconventional demand.

A PPEAL from the Civil District Court, Parish of Orleans. *Monroe, J.*

*Richardson & Soule* and *Kernan & Wall* for Plaintiff, Appellant.

*J. Zach Spearing* for Defendant, Appellee.

The opinion of the court was delivered by NICHOLLS, C. J.

On application for rehearing, by BREAUX, J.

NICHOLLS, C. J. One branch of this case was before this court in 1896, and will be found reported in the 48th Ann., p. 922, (West vs. Negrotto, Sr.), from which can be ascertained the pleadings filed, the facts found, and the issues raised and determined.

The present action is a sequence of the former one. It is a petitory action brought against the administrator of Domingo Negrotto, the defendant in the former suit, for the recovery of the same property involved in that litigation.

The plaintiff in his petition, after alleging himself to be the owner of the property, averred that he acquired the same from Wm. A. Holt, by public act of sale, June 26th, 1850; that said property was thereafter acquired by the city of New Orleans on the 19th day of June, 1893, for taxes due it, as appears by act of sale passed before J. D. Taylor, notary public of this city, of date July 12th, 1893; that subsequently he redeemed and re-acquired said property from the city of New Orleans on the 28th day of October, 1895, for a valid considera-

tion, as would appear by a redemption certificate and sale issued to him; that subsequently the city of New Orleans, through its City Council, ratified and approved said redemption and sale, and also transferred to plaintiff, his heirs and assigns, all of its rights, title and interest; that the Succession of Domingo Negrotto, Sr., through its administrator, Domingo Negrotto, is wrongfully in possession of said property; that petitioner paid to the said city of New Orleans for its said title to the said property the city taxes, penalties, interest, costs and damages, for the years 1880 to 1896, amounting to $367, which amount he is entitled to be reimbursed should his said title to said property be annulled; that the said property is worth $4000.

He prayed that the Succession of Domingo Negrotto, Sr., through its administrator, Domingo Negrotto, be cited, and that, thereafter, petitioner have judgment in his favor, over and against defendant, decreeing him to be the owner of said property, and as such entitled to the possession thereof.

He further prayed (in the event that his said title to said property should be annulled, and in that event only) that he should have judgment over and against defendant for the sum of $367, expended by petitioner, on account of said property, as aforesaid, secured by mortgage, lien, privilege and right of pledge, on said property.

He further prayed for all costs and general and equitable relief.

The defendant excepted that plaintiff's petition disclosed no legal or valid cause of action; second, that the plaintiff is estopped from setting up any right, title or interest under or by virtue of the redemption of the property described in his petition on October 28, 1895, for the reason that in a certain suit entitled West vs. D. Negrotto, Sr., No. 41,592, of the docket of the court, the said West, plaintiff in said suit, as well as in the pending suit, declared judicially that he did not claim any right in or title to said property under or by virtue of the said redemption certificate, and that the said West can not now be permitted to contradict his said judicial statement made in the said suit.

The exceptions were referred to the merits.

The defendant answered.

After pleading the general issue he specially denied that the plaintiff acquired any right, title or interest in or to the said property under or by virtue of the alleged redemption by him from the sale of the said property to the city of New Orleans, or by the subsequent

alleged and pretended ratification and approval thereof by the said city, but, on the contrary, respondent alleged that if, as alleged by the plaintiff, he redeemed the said property, then and in that event the said redemption enured to the benefit and advantage of respondent and of his ancestor as the owner of the said property, and respondent specially denied that at the time the said plaintiff claimed to have redeemed the said property he had any right, title or interest in or to the same, or any right to redeem the said property for his benefit; and respondent also specially denied that the city of New Orleans had any right to permit plaintiff to redeem said property, or to transfer the said property or any claim thereto, or interest therein, to plaintiff or any other person.

Further answering, respondent admitted and alleged that he was in possession as owner of the property described in plaintiff's petition, respondent's ancestor, D. Negrotto, Sr., having acquired the said property at a sale thereof by the Tax Collector of the Upper District of the city of New Orleans under and by virtue of the provisions of Act 82 of 1884, to enforce the payment of the State's taxes for the years 1876, 1877, 1878, evidenced by an act before Jos. H. Spearing, notary public, on the 14th day of August, 1888, duly recorded in the office of the recorder of conveyances of this parish, by which said sale the title of plaintiff to said property was completely and forever divested, as appears by a judgment of the Supreme Court of this State, rendered in the suit entitled G. W. West vs. D. Negrotto, Sr., No. 11,492, of the docket of the said Supreme Court, which said judgment and decree respondent *pleaded as res judicata.*

Further answering, respondent alleged that he had been in possession of the said property ever since the said sale to him; that at the time he acquired the said property the same had been and was abandoned by the former owner thereof; and that the said former owner had never taken or been in possession of the said property.

Further answering, respondent alleged that the said property was also regularly and legally adjudicated and sold to the State of Louisiana for the unpaid State taxes due thereon by the former owner thereof for the years subsequent to 1879, to-wit: For the years 1880, 1881, 1882, 1883; that by the aforementioned judgment of the Supreme Court in said suit No. 11,942, of the docket thereof, it was decreed that the said sales to the State likewise divested the title of the plaintiff to the said property, and the said judgment and decree is

likewise pleaded as *res judicata;* that subsequent to the said sales and adjudications to the State respondent's ancestor, the said D. Negrotto, Sr., redeemed the said property from the State under the said sales, and thereby acquired the rights, liens and mortgages of the State in and to said property, as the same will more fully appear by reference to the redemption certificate issued to respondent by the Auditor of the State, which is filed in proceedings No. 11,492, of the docket of this court, and made part of the answer.

Further answering, respondent alleged that he had paid all of the taxes legally due by or on the said property.

.Further answering, respondent alleged that subsequent to the purchase of the said property by the late D. Negrotto, Sr., the said Negrotto built seven residences on the said property at a cost of $142 for each house, making a total of nine hundred and ninety-four dollars for the said seven houses; that the building of each house had been of great advantage and benefit to the said property, and had greatly increased and enhanced its value; that in addition to the building of the said houses, respondent expended the sum of sixty-five dollars in cleaning and removing the weeds, trees and growth from the said property, which were on the same, and in digging gutters and ditches on the said property in order to drain the same and to make the said property habitable and useful; that in addition to the said seven houses herein referred to the said D. Negrotto, Sr., also erected another dwelling house on the said property, together with fences, bridges, cisterns and stable and shed, all at the cost of one hundred and eighty-six dollars; that the said D. Negrotto, Sr., paid the State taxes and costs on the said property from the years 1880 to 1891, amounting to the sum of fifty-two 30-100 dollars; that in all of the payments herein above referred to and in the ditching and draining of the said property and in the building of the said houses, the said D. Negrotto, Sr., acted in good faith, and the same was to the benefit and advantage of the said property and greatly increased its value; and in the event of judgment being rendered in favor of plaintiff, respondent was entitled to have twelve hundred and ninety-seven 30-100 dollars refunded and paid to him with interest, charges and penalties as provided by law, before respondent could be compelled to surrender said property ·to plaintiff, if such judgment be rendered and before the same could be made executory.

The premises considered, he prayed that there be judgment in his favor and against the plaintiff, dismissing the suit of plaintiff at his cost, but in the event of judgment being rendered in favor of plaintiff and in the alternative respondent prayed that there be judg- ment in his favor and against the plaintiff for the sum of one thousand two hundred and ninety-seven and 30-100 dollars, with interest, costs, charges and penalties as provided by law, and that respondent be relieved from surrendering said property to plaintiff, if judgment be rendered in his favor, until the full and final payment of the said sum, and that the said judgment if rendered be made not executory until the full and final payment to the respondent of what- ever may be adjudged to be due to him in these proceedings, and re- spondent further prayed for all equitable and general relief.

The court rendered judgment in favor of the defendant, rejecting. plaintiff's demand, and the latter appealed.

OPINION.

The property involved in this litigation belonged originally to George W. West, and while standing assessed in his name was adjudi- cated in January, 1885, to the State; first, under Act No. 77 of 1880, for the unpaid taxes of 1881, and later under Act 96 of 1882, for the unpaid taxes of 1882 and 1883. While so situated, it was offered for sale under Act No. 82 of 1884, and adjudicated to Domingo Negrotto on the 14th of August, 1888, for the unpaid taxes for the years 1876, 1877 and 1878, assessed in the name of West. The city taxes for all the years from 1870 to 1879 were also due. At the date of the adju- dication additional State and city taxes from 1880 up to and inclu- sive of 1888 were also due. The property was adjudicated to Negrotto under a bid of one dollar, which he paid. Notwithstanding he failed to pay the city and State taxes then upon the property, the tax col- lector gave him deeds for the property. This he should not have done, as, under the law under which the purchase was made, it was Negrotto's duty to have paid all the State and city taxes then due.

In West vs. Negrotto, 48 Ann., 923, we held that he was really without title until he had done so, and that had the original owner, West, while matters were in that situation, made payment of the taxes to the State, and been permitted by the State officers to redeem the property and retake title, the purchaser, Negrotto, would not have

been in a position to call such action in question, he being in default and having no rights himself; that West, the original owner, would have occupied, under such circumstances, the position of Remick in Remick vs. Lang; that as a matter of fact, West had not gone forward and paid the State taxes and retaken title, but Negrotto, who from 1888 to 1893 had not paid the taxes, went forward, paid those taxes and obtained from the State officers a certificate of redemption on the 29th of March, 1893.

When the city of New Orleans found that the title of the property had passed from the State to Negrotto, and that it was, therefore, free to pursue remedies in enforcement of its past due taxes, it found among those taxes those which had stood on its books under the assessment against West which it had been made the duty of Negrotto, under his adjudication, to have paid. It, therefore, proceeded to offer the property for sale, and at the sale bid it in itself on July 12, 1893, but this was after Negrotto had (though tardily) paid the delayed State taxes, and had received the certificate of redemption referred to.

On November 5, 1895, West brought a petitory action against Negrotto for the recovery of the property upon the evident theory and belief that he occupied the same position which Remick did in Remick vs. Lang; that Negrotto not having paid the State taxes at the moment of the adjudication, had acquired no title; that twelve months having elapsed after the sale without such payment, the State officers were without authority to convey title, and their whole authority was to receive payment of the taxes, and that the only effect of the payment of the taxes by Negrotto was to entitle him to recover the amount so paid as money paid for his, West's, use and benefit.

We adjudged that this claim of West was not well founded; that he had not attacked the adjudication of the property to the State; that though Negrotto may not have taken title by reason of his failure to pay the State taxes at once, the effect of that neglect was not to cause West to regain title, but left it in the State; and that West, having no interest in the property, was not in a position to question the authority of the State officers to convey the title to Negrotto.

It appears, however, that after the city of New Orleans had proceeded against the property for its own delayed taxes, and had bid it in itself, West went forward and paid the taxes to the city, which,

thereupon, gave him a certificate of redemption, and on the trial of the cause he sought to introduce this certificate and the tax deed to the city in evidence. The testimony was objected to and excluded on the ground that it was not admissible under the pleadings, as West had not predicated any rights upon them, and this ruling was sustained on the appeal of the cause.

This court decreed (48 Ann., 926) that the adjudication made of the property in litigation to the State in enforcement of the taxes thereon in the name of George W. West, divested the latter of the ownership thereof, and vested the same in the State of Louisiana. and said fact stood as a bar to plaintiff's action on his original title; but his rights, if any he had, under the adjudication of said property to the city of New Orleans, were expressly reserved to him—they not being considered or included in the decree. Plaintiff's demand was rejected with the reservation stated.

A rehearing in the case was refused May 14, 1896.

Plaintiff filed the present action on the 4th of October, 1897.

The plea of *res judicata* set up by the defendant is not well grounded. Plaintiff does not seek to recover in this case upon his original title, but under the title acquired by the city in enforcement of its taxes, and besides this the judgment expressly reserved from being covered by it any rights which plaintiff might have derived from the city.

The original title of West to the property is not in dispute in this litigation. The tax sales, made both by the State and the city, were based upon the fact of such ownership.

The evidence establishes the fact that after the State officers had permitted Domingo Negrotto to pay the State taxes which should have been paid by him prior to his receiving a deed of the property adjudicated to him, and had issued to him what is referred to as a redemption in his favor of the property, the city of New Orleans proceeded to enforce payment of its own taxes by sale of that property, and at the sale bid it in itself.

The validity of that sale is not attacked.

Defendant rests his defense upon the proposition that the present being a petitory action, the plaintiff must recover upon the strength of his own title, not on the weakness of his adversary, and that the city officials were without power or authority to permit West to redeem the property as they did, as he had no interest in it at that time,

and the time for redemption besides had passed; that the only effect of the payment of the city taxes, by West, was to extinguish the same and relieve the property and entitle West to recover from him, defendant, the amount so paid, as money paid out for his use and benefit.

It will be seen that the parties occupy, to a very considerable extent, reverse positions to those which they occupied in the former suit, defendant arguing in the present action on the same line as West did before.

It is proper that we see what the situations of all the parties were at the time of the adjudication by the State to Domingo Negrotto; West had admittedly been divested of the ownership of the same by the adjudications to the State.

At the time of the adjudication to the State there were taxes due upon it to the city of New Orleans. The effect of the adjudications to the State was not to prejudice the rights of the city—they remained unimpaired. This is manifest, for any sale of the property thereafter, as owner, was directed by law to be made on the express terms and conditions that the purchaser should pay not only all State taxes on the property, but also all city taxes.

The failure of Negrotto, when the State adjudicated the property to him, to pay the State taxes, placed him in the position of not being able to claim title *ipso facto* by the adjudication and under the sale; payment of those taxes was a condition precedent to a transfer of ownership. Negrotto ultimately paid those taxes and received what, as we have said, was denominated "a redemption certificate," but as Negrotto had at that time no title to redeem, it is obvious that this was a misnomer, and that what was really done by the Auditor was to authorize Negrotto, though in default, to pay at the time he did and *nunc pro tunc* the taxes which he should have paid at the time of the adjudication, and to vest title in him then for the first time, but by relation back to the day of sale. We held in the former suit that West was not in a position to question the right of the Auditor to receive this delayed payment and to give retroactive effect to it.

Whether the State could now, after receiving payment of its taxes through its officers, repudiate their action and claim ownership of the property, we need not seek to discuss, for it has never done so, and until it should have done so successfully, we have to consider that the title passed to Negrotto.

But, the vesting of the title in Negrotto left the property subjected to the city taxes, not simply by force of the original assessment and levies, but by right to their enforcement supplemented by the direct personal obligation which Negrotto assumed under the terms and conditions of his purchase.

It was his duty to have paid those taxes at once to the city, and though the effect of his not doing so may not have been so radical and sweeping, *quoad* title, as was his failure to pay the State taxes (for the State tax collector was not authorized to receive payment himself of any taxes other than those due the State), there is no question of his being liable to the city as a purchaser *cum onere* from the State, but also liable as a purchaser as part of his purchase price, the State having, under the law acting for the interest and protection of the city's rights, made that payment one of the terms and conditions of the sale.

The title having passed to Negrotto, the city was legally authorized to enforce its taxes upon the property in his possession.

It did so under proceedings, the validity of which are not assailed and which are, presumptively, correct.

It acquired the title, and, as against Negrotto, either the city is the owner of the same or West is the owner. Defendant insists that the city officers were without authority to permit West to redeem the property, or to receive a transfer of the same on a payment by him of the taxes made at the time and under the circumstances he did; that West had no title to redeem; that the effect of the payment of the taxes to the city was to extinguish the taxes, relieve the property from the same, and to leave West with only a claim against Negrotto for the amount of the taxes paid as so much money paid for Negrotto's use and benefit. This is precisely the same argument which West unsuccessfully urged against Negrotto in the former suit.

The State in receiving the payment of the State taxes from Negrotto, and Negrotto in making payment of those taxes, were not acting in the interest of West, but were each acting in his and its own interest, and the city in receiving the payment of the city taxes from West, and West in paying those taxes, were not acting in the interest of Negrotto, but were each acting in his and its own interest. The object of the transaction in the one case was to *transfer owner-*

*ship from the State to Negrotto;* in the other to transfer *ownership from the city to West.*

Assuming, as we have to do, that the city acquired the ownership of this property by the adjudication to it, what is the legal situation?

Defendant urges that this is a petitory action, and plaintiff must recover on the strength of his title, not on the weakness of the party in possession; that plaintiff's title is not good.

Now, as the plaintiff claims under the city, and the city has been shown to have acquired the property at a tax-sale, whose legality is not contested, the issue is narrowed to the question whether the condition of things is such as to justify the defendant in contesting the title of the property as *between the city and West.* In other words, is the situation such that the defendant can legally insist that there is a valid, legal, outstanding title in the city.

There is no doubt as to the correctness of the proposition that, in a petitory action, the plaintiff must succeed on the strength of his own title, nor of the proposition that the defendant in a petitory action can set up as against plaintiff's demand the existence of an outstanding title to the property in a third person. In the latter case, however, the outstanding title must be a valid, legal, subsisting title, better than that of the plaintiff (Mays vs. Witkowski, 46 Ann., 1475), and, in the former case, if plaintiff's title be weak, it must, in order to entitle defendant to question it, be a weakness resulting from some radical and not from some mere relative nullity (Hennen's Digest, p. 1114, No. 2; Scott vs. Briscoe, 37 Ann., 178; Bernard vs. Noel, 45 Ann., 1137).

Now the weakness which the defendant sets up is the existence of an outstanding title to the property in the city, but the city, whose title is thus thrown forward, has itself undertaken to transfer the same to the plaintiff. Defendant says that is true, but the city officials were without authority to make the transfer; in other words the defendant, without any claim himself to the city's transferred title, is seeking to champion collaterally in this proceeding its rights to the ownership of the property. Where an outstanding title in some third person is set up by the defendant in a petitory action, and plaintiff produces a title from that person himself, this title must stand until it be set aside by the party entitled to have the sale set aside (Scott vs. Briscoe, 37 Ann., 178; Bernard vs. Noel, 45 Ann., 1136; Font vs. McConnell, 46th Ann., 223).

It may be that the city would be able to contest the right and authority of the City Council to transfer this property, but it has manifested no intention to do so, and certainly would not before tendering back to West the money received from him.

The District Court was of the opinion that the title to the property was still in the State, but we do not think so. It is either in the city of New Orleans, or in West, and the legal title stands to-day under the action of the City Council in the name of one or other of those two.

We are not authorized to declare the transfer inoperative until it shall have been set aside by the parties in interest.

We are, therefore, of the opinion that the property involved in this litigation belongs to the plaintiff, George W. West. He does not, in his petition, charge the defendant with bad faith, nor ask for fruits or revenues.

The defendant has prayed, in the event judgment is rendered against him upon the issue of ownership, that we render judgment against plaintiff in his favor for twelve hundred and ninety-seven dollars and thirty cents for monies expended by Domingo Negrotto, in cleaning and removing weeds, trees and growth from the property, and digging, draining and gutters thereon, to make the same habitable and useful, also for the erecting of a number of houses, fences, bridges, cisterns, stables and sheds. The plaintiff, though he did not in his petition charge defendant with bad faith, did so in repelling defendant's reconventional demand. The members of this court (other than the writer of this opinion, who in respect thereto differs from them) are of the opinion that the defendant is entitled to retain possession of the property until he shall have been paid by the plaintiff the sum of twelve hundred and ninety-seven dollars and thirty cents, the amount which the court finds has been paid out for the use and benefit of the plaintiff, as set out in his answer.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the plaintiff, George W. West, have judgment in his favor, against the defendant, recognizing and decreeing him to be the owner of the property claimed by him and described herein.

It is further ordered, adjudged and decreed that he be placed in

possession thereof when he shall have paid to the Succession of Domingo Negrotto the sum of twelve hundred and ninety-seven dollars and thirty cents, and that until payment be made, defendant retain possession of the property.

MONROE, J., takes no part here, having decided this case in the lower court.

## ON APPLICATION FOR REHEARING.

BREAUX, J.   Plaintiff and appellee complains of our decree decreeing and condemning him to pay the sum of twelve hundred and ninety-seven 30-100 dollars to the defendant before taking possession of the property decreed to belong to him.   He avers that defendant, Negrotto, was found to be without title, and a possessor in bad faith, and, as such, should be entitled only to remove his improvements placed on the property, reserving to plaintiff the right to pay for them if he so elects.

He also asks that rights should be reserved to him to hereafter claim the rents and revenues from the property, and to offset any amount which may be due to defendant for improvements, with rents and revenues.

It is true, as contended by plaintiff and appellee, that the court found that the defendant was without title to the property, but it does not necessarily follow from this that he is a possessor in bad faith, and that he is, therefore, not entitled to require payment for his expenditures before the rightful owner can be placed in possession.

Defendant was the adjudicatee of the property at a tax sale, and he held a deed to the property from the tax collector.   The property passed from the State, vendor, to him.   In prior decisions, this court declared that the adjudication made of the property to the State in enforcement of the taxes, divested plaintiff of the ownership, and vested it in the State of Louisiana.   True, the rights of the city for the taxes defendant refused to pay her remained impaired.   She was not prejudiced by the sale, and, in consequence, had the right to transfer the property as she did, but it remains that defendant, Negrotto, paid the taxes to the State, and was recognized as an owner by the State through her officers.   We have not found, heretofore, nor can we here conclude that he was in bad faith and not entitled to his improvements.   The organic and other laws invest tax deeds and other proceedings with a certain degree of presumption in their support.

West vs. Negrotto, Jr., Administrator.

A tax title is *prima facie* valid. This defendant had no title, it is true, but he held from officers of the State sufficient *indicia* to protect him from demands on the presumption that he is a trespasser and *tort feasor* in possession. The improvements were made before this suit was brought, and at a time when he considered he had a right to the property. In this view we can only reiterate that which we held in our opinion.

The defendant was the only witness heard in support of his claim in reconvention amounting to more than five hundred dollars. The total being more than five hundred dollars, to form a basis of a judgment, it must be shown to be due by one witness and corroborating circumstances. We have not found the least corroborating circumstance. Throughout, this witness testified and rested his claim entirely on his own testimony. While we think that he is entitled to the value of his improvements, as heretofore decided by us, we are of the opinion that the value should be made to appear by sufficient testimony.

We think that the defendant is entitled to the taxes paid by him, which was due to the State on the property.

It is therefore ordered, adjudged and decreed that our judgment remain unchanged in any respect save as relates to the defendant's reconventional demand for improvements and taxes, and, as to this issue only, is the case remanded, that testimony may be had as to their value and as to the amount of the taxes paid by defendant and a judgment entered therefor by the District Court. As heretofore, "it is further ordered, adjudged and decreed that he be placed in possession thereof when he shall have paid to the Succession of Domingo Negrotto the sum of twelve hundred and ninety-seven dollars and thirty cents, and that, until payment be made, defendant retain possession of the property," except that now, under the amendment here, the decree reads, "when he shall have paid to the Succession of Domingo Negrotto the value of his improvements and taxes." With this change, our decree is to remain in full force and effect.

Rehearing refused, save in respect to amendment made, which is made in view of the fact that the issues are plain and more argument is unnecessary.

NICHOLLS, C. J., dissenting, handed down a separate opinion.