Statement of the Case.
NICHOLLS, C. J.
On the 22d of July, 1902, John F. Lindner filed a petition in the civil district court for the parish of Orleans, in which he averred that he was the owner of certain property in the city of New Orleans, which he described; that he acquired the same from the state of Louisiana for un *408 paid taxes due thereon, as per deed ■ dated July 16, 1901, registered in the books of the conveyance office of the parish of Orleans; that' the city of New Orleans claimed as against the property taxes for the years 1888 up to 1901, both inclusive, under assessment in the name of Mrs. Leonie Heilman from 1888 to 1897, and from 1897 to 1901 in the name of Mrs. Leonie Heilman or the I-Iowcott Land Company, Limited; that, he having acquired the property from the state of Louisiana, which state had first lien thereon, the sale thus made by said state had the effect of extinguishing and canceling all other claims or liens against said property, and especially all claims of the city of New Orleans against the property, whether taxes or otherwise; that the taxes, tax liens, and privileges securing all city taxes were prescribed by prescription of three years, which prescription he specially pleaded, and it was necessary that all claims of the city against said property should be canceled; that, being without other means of relief, a writ of mandamus should issue. He prayed that an alternative writ of mandamus issue directed to the city of New Orleans, ordering and commanding the city to cancel the aforesaid •taxes and all tax liens and privileges for the years 1888 up to 1901, both inclusive, and all other claims which it might have against the property, or show cause to the contrary. The alternative writ was ordered to issue as prayed for. After pleading the general issue, the city, in answer to the writ, averred that it was the owner of the property claimed by relator and on which the taxes w«re sought to be canceled, the same having been adjudicated to it on the 17th of September, 1894, and the notarial act evidencing such adjudication before J. D. Taylor, notary, having been duly recorded in the conveyance office; that no steps had been taken to set aside said adjudication, and more than three years had elapsed since the registry of said title, and accordingly the city pleaded in support of its title to said property the prescription of three years, the whole as set forth in article 233 of the Constitution of 1898; that the state of Louisiana could not sell said property to relator under said circumstances, and that relator was without right or inter-' est to urge the cancellation of any taxes, or liens, privileges, and mortgages securing such taxes, that might bear against the property. It prayed that the demand be rejected, and the writ recalled.
The district court rendered judgment decreeing that the writ of mandamus issued be made peremptory in s.o far as to order and command the city of New Orleans to cancel and erase from the books of its office the tax liens, privileges, and other claims it might have under the assessment in the name of Leonie Heilman from the year 1888 to the year 1898, both inclusive, against the prop-, erty which the judgment described, and in all other respects the writ of mandamus be dismissed.
The city of New Orleans appealed to the Court of Appeal. That court affirmed the judgment, and upon ¿pplication to this court the cause has been brought up for review.
The evidence discloses that the property was adjudicated to the city of New Orleans on the 17th of September, 1894, in enforcement of city taxes assessed in the name of Leonie Heilman, and that the tax deed evidencing this adjudication was registered in the books of the conveyance office of the parish of Orleans.
The city does not appear to have taken either actual or constructive possession, by writ under this adjudication. The property continued to be assessed' in the name of Leonie Heilman.
On the 20th of Julie, 1901, the property was adjudicated to the relqtor at .a, tax sale made at the instance of the state of' Louisiana in enforcement of the unpaid taxes on the same for the year 1900 assessed in the name of Leonie Heilman. A tax deed was executed to the relator on the 16th day of July, 1901, which was recorded on the books of the conveyance office of the parish of Orleans on the -— day of-.
■ On the 21st of July, 1902, an order issued from the civil district court' directed to the sheriff of the parish of Orleans commanding him to seize and place the relator in the actual possession of the property. The sheriff returned the writ on the 23d of September, declaring that he had placed the relator in possession on the 4th of September.
The city of New Orleans contends that, the property having been adjudicated to it in 1894, and its deed registered, it was ifo longer liable to state taxation; that the state was *410 without authority to assess it after the date, of the city’s acquisition for state taxes, and it was without authority to have it sold in enforcement of the same.
That the title which the city acquired in 1894 was legal and binding, and could not be ignored, divested, or set aside by the tax proceedings taken by the state. That the title claimed by relator was absolutely null, and was not of character such as to entitle him to avail himself of it so as to apply by mandamus for the cancellation of the city taxes assessed against it. That, before judgment could be rendered in his favor on such a demand, his own title should be judicially advanced by direct action against it, tested, and held good. In support of its claim that property belonging to the city of New Orleans was not liable to state taxation, to assessment for taxes, or to sale for delinquency in the payment of taxes, counsel refers the court to its decision in Gachet v. City, 52 La. Ann. 816, 817, 27 South. 348.
Relator insists that the title set up by the city of New Orleans to the property is absolutely null and void for want of the notice required by law. That prescription had not run in aid of the title, as the former owner had remained in possession after the alleged adjudication, and her possession was followed by that of relator.
He insists that the property was constantly liable to state taxation, and subject to sale at the instance of the state in enforcement of delinquent taxes, and that this would have been the case even had the title vested in the city under the adjudication which the city sets up as having been made to itself. He denies that by an adjudication to the city at a tax sale made in enforcement of city taxes the property would have become “public property” of the city of New Orleans, and denies that it is held by the city by the same tenure as that under which it held the property which was involved in the case of Gachet v. The City of New Orleans.
He further contends that the city of New Orleans, by taking no steps whatever towards acquiring either actual or constructive possession of the property under the adjudication made to it, by having permitted the original owner to remain in actual possession and the assessment of the same to be continued in her name, by having permitted it to be sold at tax sale in enforcement of state taxes under such an assess-, ment to relator, and relator to have taken and held actual possession of the property, was estopped from questioning relator’s title, particularly from doing so by a collateral attack.
Opinion,
The city of New Orleans having been called into court and invited by the plaintiff to show cause, if any it had, why the taxes, tax privileges, liens, mortgages, claims, etc., upon the property described should not be declared extinguished, and the inscriptions erased, the door was opened to it to set up any objections which it believed it had in the premises. If it was itself the owner of the property under the adjudication to it, or if the title on which relator based its demand was without just foundation, it was not only the right, but the duty, of the officers of the city to urge these facts by way of cause.
Should such a state of facts have been shown on the trial of the rule as would disclose the city’s grounds to be not well taken, it would take nothing in the cause. This,however, is something other and different from being estopped from questioning relator’s rights, or from urging judicially its own.
The situation seems to be this: Both parties claim to own the property under proceedings taken out in enforcement of delinquent taxes upon it under assessments made on it in the name of Leonie Heilman — the city in enforcement, in 1894, of city taxes; the state in enforcement of state taxes in 1901. We do not understand relator to contest the right of the city to have taken action in 1894 in enforcement of the city taxes (West v. Negrotto, 52 La. Ann. 389, 27 South. 75), but to urge that the proceedings then taken were null and void for want of legal requirements, and that the adjudication made to the city did not, under the circumstances, stand in the way of the continued assessment of the property in the name of Mrs. Leonie Hellman for state taxation, nor in the way of the enforcement of the state taxes directly against the property under such assessment as property still belonging to the original owner, Mrs. Heilman. He contends that, such assessment having been continued, and *412 a tax sale under such assessment having been made at which he became the adjudicatee, and under which he had taken actual possession ousting the parties in possession, he holds, quoad the city, the rights of the state under the adjudication, and also the position of a party in actual possession as owner, through judicial process contradictorily taken with the owner, under a title as yet uncontested by the original owner; that he has under such circumstances the same, if not a greater, right than Mrs. Leonie Heilman would have had to have the taxes and tax liens declared extinguished; that, if the city had any rights in the premises, it was forced to advance them as a plaintiff claiming title; that, even if his title he assailable by Mrs. Heilman, it is not by the city; that the latter cannot question his title unless it has itself a title beyond dispute; that any rights which it advances in the present suit are open to attack. In the application by the city for this writ of review its counsel say: “In the civil district court .there was judgment for relator, Lindner, canceling the liens and privileges on said property for the years 1888 to 1898, inclusive, and the city of New Orleans prosecuted an appeal to the Court of Appeal, and in the latter tribunal waived all other questions 'raised in its brief, and rested its contention for reversal of the judgment on the inability of the state to sell for its taxes property previously sold by the city to itself for municipal taxes, and still in the hands of the municipality.” The Court, of Appeal affirmed the judgment of the lower court in favor of relator, and maintained the right of the state to sell property thus acquired by the city, holding that “the state is sovereign, and may proceed to the enforcement of taxes on property in whatever hands it may be found; that there is no law with which the court is acquainted exempting the municipality a creature from the exercise of a sovereign’s prerogative; “that the city applied for a rehearing limited to the sole question herein presented to the Supreme Court, but the court adhered to its opinion, and refused the application.”
In its opinion the Court of Appeal used the following language: “The relator, a purchaser of real estate at a sale in 1901 for nonpayment of the state tax for 1900 seeks to cancel certain city taxes and privileges, and is met by the defense that the property was adjudicated to the city in 1894, and hence the state could not sell the property for taxes. The issue tendered and accepted-without objection in this court by either side is one of title. * * * It is argued by the city that ‘thd state authorities had no right to sell at tax sale property which had previously been sold by the city of New Orleans for its own unpaid taxes, so long as the title remained in the city.’ We do not share that view. * * * The city cannot, in reason, adjudicate property to itself, take no further steps to realize its taxes, and thus defeat the right of the state to exact her revenue for subsequent years. Full protection is afforded the city by the general provisions of existing statute as well as by the special provisions of the revenue acts to the effect that no sale for state taxes of the year immediately past due shall extinguish the claim for municipal taxes for any previous year or years.”
“The city’s right is merely suspended while the property is held by the state.”
“If seasonably exercised, this right will be found amply sufficient to secure the municipal fisc without interfering with the collection of its revenue by the state. In the instant case the sale by the state divested the city’s ownership. Its validity as to prerequisites and formalities is not assailed, and the purchaser has the right to demand the cancellation of the privileges which are prescribed.”
In refusing the application for a rehearing the court said that its decision referred to property of taxpayers adjudicated to the city at a sale for municipal taxes, and not to that held by the city for public purposes; that the quasi sovereignty of the city could not be exercised to the detriment of the sovereignty of the state, when the property was held not for public purposes, but to realize the taxes; that to hold otherwise would be to consecrate the doctrine that municipal negligence and inertia could paralyze the sovereign’s efforts to collect both its current and its past revenue; that Gachet v. City, 52 La. Ann. 814, 27 South. 348, did not militate against this view.
We are of the opinion that property liable to state taxation does not become exempt from the same by the mere fact that in en *414 forcement of the taxes of the city of New Orleans it had been adjudicated to the city, independently of the after-use made of it by the latter, and independently also of the question as to whether the proceedings taken out by the city were in reality of such legal character as to transfer the ownership to itself. Had its proceedings been legal, it would have had the right to be protected from divestiture of its title by after-proceedings taken out by the state in enforcement of its taxes, just as any other owner of property would be protected. Had the property become really the property of the city, it should have been assessed by the state in its name, and proceeded against in enforcement of the delinquent taxes contradictorily with the city. If, however, the proceedings taken by the city were of such character as, notwithstanding the same, to leave the property still in the ownership of the original owner, and she was permitted to remain in possession by the city, and the state later (either intentionally or by accident) assessed it in the name of the real owner, and, proceeding contradictorily with her to enforce payment of its taxes, it was under such proceedings adjudicated to a third person, who took actual possession of it contradictorily with the actual owner, by writ of possession, such person must provisionally and prima facie be held to be the owner of the property.
Holding that position, it was entitled to invoke in its behalf all the remedies belonging to an owner, subject, however, to contest . of its rights by the city acting as a plaintiff.
It may be that relator’s title is not sustainable as between himself and Mrs. Hellman, but the present issue is not between them. As matters are, relator has the right to stand upon his present possession under color of title as owner. The city must, rely upon the strength of its own rights, not upon the weakness of those of relator. We think that the proceedings taken out by the city in 1894 did not divest Mrs. Heilman of her ownership of the property, that the state was authorized to assess it in her name for state taxes, and to proceed in enforcement of the delinquent taxes contradictorily with her. Assuming those proceedings to have been defective, and that the owner be entitled to contest them, the adjudicatee at the sale made under them has none the less gone into and is now in actual possession of the property after notice to the owner under a writ of possession from the civil district court. The city has lost the vantage ground it might have held had it taken possession under the adjudication to it. It must suffer the legal consequences of its own 'negligence and laches. The defects in the city’s title have not been cured by prescription of three years under article 233 of the Constitution of 1898, the property having constantly remained in the actual possession of Mrs. Heilman and the relator. ■ -
For the reasons assigned, the judgment appealed from is affirmed.