GUIDRY v. TEXAS & PACIFIC RY. CO.,
Appellant

---

(April 11, 1927. Opinion and Decree.)

---

(*Syllabus by the Court.*)

1. Louisiana Digest—Carriers of Passengers and Goods—Par. 135.

In an action against the carrier for damage to goods the presumption of liability is against him and the burden is upon him to prove that the loss occurred without his fault.

Appeal from Twenty-fourth Judicial District Court. Hon. L. Robert Rivarde, Judge.

Action by M. L. Guidry against Texas & Pacific Railway Company.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Prowell & McBride, of New Orleans, attorneys for plaintiff, appellee.

John E. Fleury, of New Orleans, attorney for defendant, appellant.

JONES, J. Dissents.

CLAIBORNE, J. This is a damage suit against the defendant for delivering vegetables in a damaged condition.

The plaintiff alleged that, on February 23, 1922, he shipped over defendant's road one carload of vegetables from Hahnville to Gridley, Macon & Co., Chicago, composed of the following:

127 barrels shallots.
20 barrels carrots.
6 barrels beets.
2 crates cabbage.

That they were all in good condition at the time of shipment and all properly loaded; that the car arrived in Chicago on February 28, 1922, five days after shipment; that the vegetables were then found to be in a heated and decayed condition, the majority being unfit for human consumption; that if the car had arrived in Chicago in good condition they would have sold for $1157.00; but that the entire carload sold for $112.18, equal to a loss of $1044.82; that this loss was caused by the defendant "not properly transporting the said car and not properly icing and caring for same during the course of transportation."

Defendants admitted the shipment of the vegetables and their arrival in Chicago on February 27th at 3:45 p. m. in a decayed condition, but denied all the other allegations of the petition; that previous to the, loading of the car they had properly iced it and re-iced it at all regular icing points during its journey from Hahnville to Chicago; that it was not through any fault of theirs if the vegetables arrived in a decayed condition, but that it was evidently due to the inherent nature of the vegetables themselves.

There was judgment in favor of the plaintiff for $744.00 and the defendants have appealed.

The law of the case stated in C. C. 2754 is as follows:

"Carriers and watermen are liable for the loss or damage of the things intrusted to their care, unless they can prove that such loss or damage has been occasioned by accidental and uncontrollable events."

The burden of proof was upon the defendant to show the uncontrollable event and that it was free from fault. Flash, Hartwell & Co. vs. New Orleans, J. & G. N. R. Co., 23 La. Ann. 353; Julien vs. Capt. of Steamer, 27 La. Ann. 377; Maignan & Laborde vs. New Orleans, J. & G. N. R. Co., 24 La. Ann. 333; National Rice Milling Co. vs. New Orleans & N. E. R. Co. et al., 32 La. 615, 61 South. 708; McIntosh vs. Gastenhoffer, 2 Rob. 403; Kelly vs. Benedict, 5 Rob. 138; Chapman vs. New Orleans, J. & G. N. R. Co., 21 La. Ann. 224; Brauer vs. Barque Almoner, 18 La. Ann. 266; Mahon vs. Steamer Olive Branch, 18 La. Ann. 107; Succession of Perret, 17 La. Ann. 302; Watts & Co. vs. Steamboat Saxon, 11 La. Ann. 43; Grieff & Co. vs. Switzer, 11 La. Ann. 324; Lengsfield vs. Jones, 11 La. Ann. 624; Whitney & Co. vs. Gauche, 11 La. Ann. 432; Brourseau & Co. vs. Hudson, 11 La. Ann. 428; Ship Rappahannock vs. Woodruff & Co., 11 La. Ann. 698; Edward vs. Steamer Cahawba, 14 La. Ann. 224; Tardos vs. Ship Toulen, 14 La. Ann. 430; Montgomery vs. Ship Abbey Pratt, 6 La. Ann. 410; Steamer Jean Webre vs. Kendall Carter & Co., 12 La. Ann. 446; Price, Frost & Co. vs. Ship Uriel, 10 La. Ann. 413; Bond vs. Frost, 8 La. Ann. 299; Bliss vs. Patrick, 6 La. Ann. 546; Bond vs. Frost, 6 La. Ann. 802; Shaw vs. Gondolfo & Co., 9 La. Ann. 33; Benadon vs. Nolte, 7 Mat. (O. S.) 283; Hunt vs. Morris, 6 Mart. (O. S.) 681-682; Patton vs. Pickles, 50 La. Ann. 857, 24 South. 290; Hopkins vs. New Orleans Ry. & Lt. Co., 150 La. 61, 90 South. 512; Spurlock vs. Shreveport Traction Co., 118 La. 1, 42 South. 575; State ex rel. Lindner vs. City of New Orleans, 110 La. 405, 34 South. 582; Lehman, Stern & Co., Ltd., vs. Morgan's La. & Tex. R. & S. S. Co., 115 La. 1, 38 South. 873; Southern Cotton Oil Co. vs. New Orleans & N. E. R. Co., 146 La. 541, 83 South. 821; Savings & Homestead Assn. vs. Frank, 146 La. 223, 83 South. 491.

The Civil Code should prevail as it is not in conflirt with federal law or jurisprudence." 132 La. 615 (651), 234 U. S. 412, nor with the common law, 10 C. J., p. 132, S. 168, p. 377, note C.

"Where the class of goods shipped requires refrigeration it is the duty of the carrier to provide a supply of ice sufficient for the purpose not merely at the point of shipment but at such places along its line as will reasonably insure a safe transit to the point of destination." 10 C. J. 92 S. 101; 133 Iowa 522; 110 N. W. 897.

The plaintiff has established by his own testimony and that of Henry Zeringue and M. L. Guidry that the vegetables were in first-class condition when shipped, and that the weather was cool; Zeringue had no interest in the shipment and had been raising vegetables thirty years.

A. W. Scholz, commission merchant in Chicago, testifies that the vegetables were in a heated condition, especially the shallots, which were yellow and slimy, and the carrots were badly heated "due to improper icing of the car bunkers being less than one-third full", and "were practicaly unsalable"; the air in the car was too warm.

G. W. Bollbach, vegetable salesman for Guidley, Maxon & Co., of Chicago, for thirty years: "Beets and cabbages were but slightly affected, carrot tops all yellow, shallots slimy and yellow due to improper refrigeration of car; due to their heated condition, together with the warm air in the car and the bunkers being about one-third full of ice, bunkers closed."

L. J. Labry, agent of the defendant railroad at Hahnville, testified that the car arrived there at 10 a. m., February 22, fully iced; the plaintiff released the car at 4 p. m., February 23.

A. P. Harvey testified that he put four tons or 8000 pounds of ice in the bunkers of the car at New Orleans prior to sending it to Hahnville in February.

H. Ruppert, employed by defendant in February to check and re-ice freezers or refrigerator cars; the car in suit arrived in the city at 3 a. m. of the 24th with bunkers one-quarter full of ice, or 1500 pounds to each end; he added 5000 pounds; at 5:30 the car was delivered to the Illinois Central; he makes a rough record of these facts himself and then his son writes it out for him; his son is also employed by the Illinois Central as a messenger; he is 17 years of age.

C. F. Seiler, freight agent for the Illinois Central, knows nothing about icing, but his records show that when the car left the station its bunkers were full of ice.

H. M. Carruth, yard clerk at McComb City, testified that 900 pounds were put in the car at 5:10 a. m., February 25, 1922.

F. C. Reaves, icing clerk for Illinois Central at Nonconnah, Tennessee, put 600 pounds of ice in car; fourteen-fifteenths full of ice.

A. A. Ulrich, refrigerator clerk at Nonconnah, Tennessee, for Illinois Central Railroad, issued instructions to re-ice car full capacity; car fourteen-fifteenths full; 600 pounds needed.

E. W. Duncan, icing foreman for I. C. Railroad at Mounds, Illinois, testified from records that the car was iced by him on February 26 with 600 pounds of ice.

E. F. McPike, manager of perishable freight service of Illinois Central system; has made special study of perishable freight of fruits, vegetables and other commodities, and icing, ventilating and re-

frigerating these cars. After enumerating the different points of re-icing of the vegetables in suit he says:

"It is my opinion that the alleged damaged condition in which these vegetables were upon arrival at Chicago was either the direct result of their own inherent nature and tendency to deteriorate and decay, or were attributable to their bad condition at time of loading, or some other cause before the receipt of the car by the Illinois Central Railroad."

The outside temperature was as follows:

1922—Feb. 24, New Orleans _____ 60 degrees
         Feb. 25, McComb  _____58    "
         Feb. 25, Gwin  _____50    "
         Feb. 26, Nonconnah  _____40    "
         Feb. 26, Mounds  _____40    "
         Feb. 27, Chicago  _____32    "

The evidence establishes beyond a doubt two essential propositions: 1st, that the vegetables were shipped in good condition and that they reached their destination in Chicago in a damaged condition. The burden of proof was upon the defendants to account for that change. They have attempted to show that the change occurred from the inherent nature of the vegetables and their tendency to deteriorate, and for that purpose they produced the opinion of their expert, E. T. McPike. But there is no testimony that any of the vegetables of the kind shipped by the plaintiff would spoil within the period of five days if given the usual proper attention. Therefore, this testimony cannot avail the defendants.

There is, therefore, left only one escape for the defendants, and that is that the car was properly iced. It is true that employees of the defendants testify that the bunkers of the car were kept supplied to capacity with ice. But the testimony of these witnesses must be taken with all the influences of interest and uncertainties of times and conditions. They handle thousands of cars and speak of occurrences years behind and mostly from records. There is every occasion for error and confusion. Their testimony is confronted by the contradiction of witnesses who opened the car in Chicago and by the stern fact that when the car was opened at Chicago the bunkers were only partly filled with ice, the air within the car was warm, and the vegetables were heated and spoiled.

The defendants carry thousands of vegetables from New Orleans to Chicago in refrigerator cars, and there is no testimony that vegetables plucked as these were from the ground a few hours before shipment, placed in refrigerated cars, and delivered within five days, were unfit for consumption at destination, as in Corso & Co. vs. New Orleans & N. R. Co., 48 La. Ann. 1296, 20 South. 752.

Opinions and testimony must yield to stubborn facts. McCubbin vs. Hastings, 27 La. Ann. 718; State vs. Crozat, 8 La. Ann. 297.