Font et als. vs. McConnell.

---

## No. 11,340.

### GEORGE FONT ET ALS. VS. JAMES McCONNELL, JR.

1. Defendant in possession claiming title has the right to require that plaintiff not only show a better title than his own, but a title as good as any the latter can oppose to him, whether vested in defendant or not. This outstanding title must be a legal subsisting and better title than the plaintiff.
2. Where defendant does not claim to hold himself under that title, but avers that it is vested not in the plaintiff but in others, his contention is repelled by a judgment having the force of *res judicata* rendered contradictorily between the parties themselves which decreed the plaintiffs to legally own the same.

APPEAL from the Civil District Court, Parish of Orleans.
King, J.

---

*Gus. A. Breaux* and *T. H. Thorpe*, Attorneys for Plaintiffs and Appellees:

1. Courts of justice will properly exclude testimony from the record, to which no force will be given if admitted. Bender vs. Belknap, 23 An. 765.
2. As between the parties and their heirs, authentic acts make full proof, unless attacked for forgery. C. C. 2236; Boone vs. Carroll, 35 An. 283; McKenzie vs. Bacon, 40 An. 162."
3. An attorney making a judicial averment in a suit he is prosecuting is bound absolutely by such averment, and can not thereafter be permitted to contradict it. Delacroix vs. Prevost, 6 M. 280; Denton vs. Erwin, 5 An. 23; Farrar vs. Stacey, 2 An. 211; Freeman vs. Savage, 2 An. 369; Osborn vs. Segras, 29 An. 291; Bender vs. Belknap, 23 An. 765; Folger vs. Palucer, 35 An. 743; Gaudet vs. Gauthreaux, 40 An. 189.

4. Estoppels *in judicio* are conclusive on all parties making them, simply for the averment. *Ex ore tuo, te judico*, is both the maxim and the policy of the law. Delacroix vs. Prevost, 6 M. 280; Freeman vs. Savage, 2 An. 269; Bender vs. Belknap, 23 An. 765.

5. Offers of statements of evidence not produced, and its absence not accounted for, will not authorize the admission. Nor will the offer of evidence of the existence of a counter letter be admitted in the unexplained absence of the counter letter. It is not the best evidence.

6. When an issue of title has been presented between parties to a suit they are concluded as to all titles alleged to exist prior to and at the time of trial. Schaffer vs. Scuddy, 14 An. 574; Treecot vs. Lewis, 12 An. 613; Hennen's Digest, Inj. II (612), 2; Hennen's Digest, Judg. XV (6), 35, 36.

7. As between the parties and assigns, no title can be attacked except by counter letter, whether for alleged simulation or otherwise. C. C. 2239; Hebert vs. Lege, 29 An. 512.

8. Allegations that parties holding a title translative of property, for valuable consideration, with a judgment of the Supreme Court quieting them in their ownership, are acting in fraud because they aver such a title to be theirs, is a wanton allegation, when made by a party fully cognizant of all the facts, from which he can take nothing.

9. When a tax sale is made of property assessed in the name of a total stranger to it the sale is an absolute nullity. Property must be assessed in the name of the owner. Thibodeaux vs. Keller, 29 An. 509; Fix vs. Succession Dicker, 30 An. 921.

10. The State, having acquired nothing from a sale absolutely null, could transfer no rights. Breaux vs. Negrotto, 43 An. 433.

11. "Parties are those who have the right to control the proceedings in an action. They may or may not be parties to the record; the interest they have in the suit, and not their status, determines their relation to the suit." 21 Am. and Eng. Encyc. of Law, 177; 45 An. 493.

12. "Extrinsic evidence is admissible to prove that a real party in a suit was not a party to the record, but that he prosecuted or defended the suit in the name of a nominal party; and whenever this is made to appear, the real party is concluded by the judgment as effectually as if he had been a party to the record. And generally when a suit is brought in the name of one for the benefit of another, the latter, being the real party, will be barred as conclusively as if he were a party of record." 21 Am. and Eng. Encyc. of Law, 141; Follansbee vs. Walker, 74 Pa. St. 306.

*Harry H. Hall* for Defendant and Appellant:

1. In a petitory action plaintiff must recover upon the strength of his own title, and not upon the weakness of that of his adversary. 9 U. S. 267; 12 U. S. 31; 5 La. 178, 183; 10 La. 351; 14 La. 17; 1 R. 273, 378, 421; 12 R. 371; 2 An. 346; 13 An. 114; 27 An. 57; 11 An. 56.

2. Defendant is not bound to show title, but plaintiff must show his, and defendant may take advantage of any defect, radical or apparent, in plaintiff's title. 8 U. S. 105; 5 An. 678.

3. Article 2236, C. C., does not prohibit proof of simulation of an authentic act when fraud is charged. 4 R. 290; 9 An. 278.

4. One buying land from the State of Louisiana, to whom the same had been adjudicated for non-payment of taxes, is not an *assign* of the original owner under C. C., Art. 2226.

5. An attorney at law is not, by reason of having brought an unsuccessful suit for a client, claiming that the possession thereof for fifty-four years entitled her to the ownership thereof, estopped to set up against a third person, with his client's assent, a tax title in his own name, to the same property.

6. Allegations in a previous suit, based upon the same instrument, can not form matter of estoppel when it leaves the parties in the same relative position. 16 An. 190; 23 An. 647; 34 An. 1152; 39 An. 443.

7. After judgment one may allege any fact consistent therewith, although inconsistent with the allegations of the first suit. Bigelow on estoppel, p. 689.

8. One is not bound by allegations unsuccessfully pleaded. 104 Pa. St. 595; 105 Pa. St. 615.

Same counsel on Application for a Rehearing:

1. No tender of the price of the tax sale, with 10 per cent. interest, was made by plaintiffs. Quoting Constitution of the State, Art. 210.

*G. A. Breaux* and *T. H. Thorpe contra:*

Citing Breaux vs. Negrotto, 43 An. 433; Guidry vs. Broussard, 32 An. 926; and Staf ford vs. Twitchell, 33 An. 530.

The opinion of the court was delivered by

NICHOLLS, C. J. The plaintiffs allege that they are the sole heirs of Louis F. Bundy, deceased, and as such are the owners of certain immovable property situated in the Sixth District of the city of New Orleans described in their petition. That their ancestor acquired said property by notarial act of sale (which was duly recorded) on the 16th December, 1837, from John Greene; that on the 27th October, 1891, the defendant as the attorney of Julia Caroline Roe, widow of John Greene, instituted in her name a suit in the Civil District Court for the parish of Orleans against petitioners, in the petition in which suit the present defendant did aver that said Julia Caroline Roe was the owner of said property and prayed for a judgment decreeing her to be such and ordering the erasure from the records of the inscription of the act of sale from John Greene to Louis F. Bundy. That petitioners were cited to appear and answer that demand, and they did appear and answer thereto, and averred their ownership of said property and prayed to be recognized and quieted in their ownership thereof.

That upon the issue thus joined said suit was tried in the Civil District Court and final judgment was given therein rejecting the demand and decreeing the present petitioners to be the owners of said property. That from said judgment an appeal was taken by the

present defendant as attorney for Mrs. Julia Caroline Roe, widow of John Greene, to the Supreme Court, where the said judgment of the District Court was affirmed, the decree of the Supreme Court becoming final on the 27th March, 1893 (45 An., p. 398), and by virtue thereof petitioners are entitled to the undisturbed ownership and possession of said property.

That on the 28th March, 1893, the present defendant presented to the Civil District Court a petition in which he averred that he was the owner of said property by virtue of an act of sale passed June 19, 1891, to him by the Auditor of Public Accounts of the State of Louisiana, transferring to him the title of the State acquired by previous adjudication for the unpaid taxes assessed against said property for the years 1881, 1882 and 1883, in the name of one G. W. Brown, which said act of sale was recorded in the conveyance office of the parish of Orleans on the 8th of July, 1892, and said petition being allotted to Division "C" of said court, the defendant prayed for and obtained a writ of possession commanding the civil sheriff to place him in possession of· said property, and in execution of said writ the sheriff did seize the same and did put defendant in possession thereof, which said possession the defendant holds and that defendant ʀclaims to hold said property as owner against petitioners and refuses to surrender same to them upon their demand. That prior to the institution of the present suit the defendant informed petitioners that he would not surrender said property to them or cancel said act of sale from said auditor to him upon payment by them to him of the sum paid by him to said auditor for said act of sale. Petitioners represent that by the judicial averment and admission made by the defendant in the petition of Julia Caroline Roe, widow of John Greene, against petitioners, in the suit referred to, that she was the owner of said property the defendant was, and is, in equity and by law forever estopped from asserting or claiming in or for himself against petitioners any ownership of or title to said property, acquired or existing at or before the making of said judicial averment or admission, which estoppel they expressly plead in perpetual bar of defendant's claim of right of ownership and possession of said property under and by virtue of said act of sale from the auditor to him.

Petitioners further represent that by said judicial averments and admissions in said suit, the present defendant renounced and aban-

doned in favor of the parties to said suit any and all claims of right and title he may have had in or to said property, which said renunciation and abandonment they expressly plead in bar to his claim of ownership under and by virtue of said act of sale from the auditor to him.

They aver that the adjudication of said property to the State of Louisiana, recited in the act of sale of the auditor to the defendant, was and is an absolute nullity upon its face, and conferred no right or title in or to said property for this, to-wit: That said adjudication was made in the proceeding of the State of Louisiana vs. G. W. Brown, for taxes of the years 1881, 1882 and 1883, assessed in the name of said Brown; that said Brown was not during those years, nor had he ever been since the year 1837, the owner of said property; that during said years 1881, 1882 and 1883, there was no inscription upon the records of the parish of Orleans of a title to said property in the name of said Brown; that during said years and always since December 16, 1837, petitioners and their ancestor, Louis F. Bundy, were and have been owners of said property, and their title thereto has been inscribed upon the conveyance records of the parish of Orleans continuously since the 16th day of December, 1837, and the assessment of the taxes for which said adjudication was pretended to have been made not having been in the name of the true owners of said property, nor of any one having an interest in or to the same when title was spread upon the records of the parish of Orleans, there was no assessment of taxes against said property to form the basis of said pretended adjudication, and the same was and is absolutely null and void upon its face; conferred upon the State no right or title to said property, and hence the State could confer none to defendant by the act of sale of the auditor to him, all of which was fully known to the defendant at and before the passing of the said act of sale.

Petitioners aver that by reason of all the foregoing, the defendant has taken and holds possession of said property without right or title and in bad faith, and he owes petitioners rents and revenues of the same from the commencement of said possession, to-wit: the third day of April, 1893, until delivery of said possession to them, and said rents and revenues are worth to them one hundred dollars per month.

The prayer of petitioners in the premises was that the defendant

be cited to appear and answer; that after due proceedings there be judgment in their favor, decreeing the adjudication of the property to the State of Louisiana in the proceeding of the State vs. Brown to be null, void and of no effect, and ordering the inscription of the same upon the records of the parish of Orleans to be erased, and decreeing that the act of sale of the Auditor of Public Accounts of the State of Louisiana to the defendant, purporting to transfer and convey said property, to be null, void and of no effect, and ordering the same to be canceled and the inscription thereof upon the records of the office of the Register of Conveyances of the parish of Orleans to be erased, and decreeing petitioners to be the true and lawful owners of the property described, and ordering that they be put in possession thereof and quieted as owners and possessors thereof, and condemning defendant to pay to them rents and revenues of said property at the rate of $100 per month, from April 3, 1893, until delivery of possession of the same to petitioners.

Defendant in his answer first pleads a general denial. He then admits that he is in full and complete possession of the property, and that he purchased said property from the State of Louisiana, as is evidenced by the act of June, 19, 1891, from the auditor. He avers that said act of sale was perfected as to all the world on the 6th of July, 1892, by registry of the same in the conveyance office of the parish of Orleans. He admits that he was duly put in possession of said property by judgment of the Civil District Court on April 3, 1893, and he avers that he now owns and possesses said property in full and complete and perfect ownership in good faith and under a valid title translative of ownership and a judgment of court recognizing said title and ownership. He specially denies that plaintiffs have any valid or legal title to the property thus claimed by them, averring the fact to be that the act of sale under and by virtue of which they claim said property, to-wit: a notarial act to Louis F. Bundy, deceased, December 16, 1837, was and is a mere sham and simulated title made by John Greene to L. F. Bundy solely for the convenience of the former; that neither the latter nor his heirs have ever had any interest or ownership in said property; that L. F. Bundy, during his lifetime, never had possession of said property, nor exercised nor attempted to exercise any act of ownership thereon; that plaintiffs' pretensions are fraudulent and made in bad

faith, they knowing full well that their said ancestor had no interest and no right in and to said property. He prays that their demand be rejected.

On the trial plaintiff offered in evidence a copy of the act of sale from John Greene to Louis F. Bundy, dated December 16, 1837; and also certificate of the registry thereof; also certificate of the Register of Conveyances of the non-alienation of the same after that date; also the petition in the suit of Roe vs. The Heirs of Louis F. Bundy; the amended petition in the same suit; the answer of the defendant therein; and the judgments of the District Court and the Supreme Court.

The defendant offered the act of sale from the auditor to the defendant, under date of 19th of July, 1891, and the certificate showing its registry in the conveyance office of the parish of Orleans on the 9th of July, 1892. Plaintiffs objected to this evidence on the ground that the deed antedated the filing of the suit of Roe vs. The Heirs of Bundy, and that the defendant was estopped by the judicial admissions of the petition in said suit from setting up any title in himself in conflict with the title asserted in that petition.

The court admitted the evidence, stating "the objection would go to its effect and not to its admissibility." Plaintiffs reserved a bill of exceptions. Defendant next offered without objection the record of the proceedings placing him in possession under the auditor's deed.

Upon his next offering parol testimony for the purpose of proving the averments of the answer that Bundy never had any money with which to buy this property—that he never bought it, and that the title in his name was a sham—in other words to support the averment of simulation, plaintiffs objected to all evidence offered to sustain that averment on the ground that the defendant is concluded by the terms of a notarial act from Greene to Bundy; that in the absence of an averment by him that said deed was a forgery, the law would not permit him to contradict the terms of the agreement expressed by the terms of that act; that the defendant, having failed to allege in his answer that there was fraud or error in the notarial act from Greene to Bundy, can not be heard to allege its simulation, and that he is estopped by his judicial admissions in the suit of Roe vs. The Heirs of Bundy from questioning the verity and validity of the title from Greene to Bundy.

The court sustained the objection and ruled that testimony for the

purposes sought should not be admitted on the ground that the present defendant was the attorney of Mrs. Julia Caroline Roe in the suit of Roe vs. The Heirs of Bundy; that as said attorney he had averred Mrs. Greene was the owner of the property in dispute against the heirs of Bundy; that he then held the title under which he now claims ownership and possession, which title was antagonistic both to that of his client and that of the heirs of Bundy; that he did not advance that title then and that he can not do so now; that to allow him to do so now would be to contradict his former declarations as attorney of Mrs. Greene on which the judgment of the court had been sought and obtained.

Defendant reserved a bill to this ruling of the court, the effect of which was to effectually cut off all attack upon the title of the property, as between John Greene and his widow and the plaintiffs. Defendant made no effort to support the tax title further than through the evidence already alluded to.

The court rendered judgment in favor of the plaintiffs, recognizing and decreeing them to be the true and lawful owners of the property described, and adjudging and decreeing null and void the sale of the said property evidenced by the act of sale from the Auditor of the State of Louisiana to the defendant of date of June 19, 1891, and ordering that the inscription of the same in the conveyance office of the parish of Orleans be canceled and erased, but rejecting plaintiffs' demand for rents and revenues.

Defendant has appealed.

The present action is under its pleadings petitory in character. That action is governed by well established rules, one of which is that the plaintiff must recover on the strength of his own title and not the weakness of that of the defendant. Another, that the defendant in possession claiming title has the right to require that plaintiff not only show a better title than defendant does, but a title as good as any the latter can oppose to him, whether vested in the defendant or not. The outstanding title in a third person, of which he is entitled to avail himself, must be a legal subsisting and better title than the plaintiff's, and it has been held that it must be pleaded in order that plaintiff may have notice thereof.

In the case at bar, defendant rests his own claim of ownership and possession upon an adjudication made to the State under the title of one G. W. Brown, the origin of which is neither alleged nor shown;

neither in his pleadings nor in his evidence has he as to his own actual personal rights gone beyond and behind the auditor's deed of sale to him and the recitals of the same. He does not claim to hold under the John Greene title, but seeks to avail himself of it as the title of a third person. He has attempted in this suit to establish as a fact to enure to his benefit that the John Greene title is a legal subsisting title vested in Mrs. Greene, outstanding and held adversely to that advanced as their own and relied upon by the plaintiffs. He does not claim that the Greene title is outstanding both as to Mrs. Greene and the heirs of Bundy; he contends that Mrs. Greene holds that title and denies that the plaintiffs have acquired it. Defendant overlooks the fact that the questions which he, claiming as a third person, endeavors to have collaterally looked into by us in'this proceeding have been directly examined through judicial proceedings, which have terminated in a decree of this court between the very parties themselves whose clashing claims he now wishes passed upon. Mrs. Greene in that matter unsuccessfully championed her own rights as universal legatee of her husband against the present plaintiffs, who, in the suit brought by her, against them, successfully pleaded in reconvention their rights of ownership under the notarial act of sale, from her husband to the ancestor of the defendants. The right of ownership between these parties to this property has been fixed by a judgment now *res judicata*, and it can not be reopened by one who asserts himself no legal adverse interest in the Greene title. This view sustains the ruling of the district judge on the question of the admissibility of evidence to attack as being simulated the title of the Bundy heirs to the property.

The issue as to the Greene title being disposed of, defendant's rights are made to depend by him upon the tax title conveyed to him by the State. We have before us unquestionable evidence that as far back as 1837 the title of this property was placed of record as being in Louis F. Bundy, and derived by him from John Greene, and unquestionable evidence that from that time to the 8th day of July, 1892, when the defendant was placed in possession under the auditor's deed, the property was in the continuous possession of John Greene and his widow and universal legatee. In the litigation between the widow and the Bundy heirs the character of that possession was declared to have been continuously a precarious one—not legally a possession of Greene and his widow, but legally a detention

or custody by them of the property for Louis F. Bundy and his heirs. Defendant did not introduce in evidence the proceedings under which it is claimed that the property was adjudicated to the State or in any way show at what time or in what manner Brown, in whose name the property was assessed for the taxes of 1881, 1882 and 1883, became connected with it or what that connection was; he has failed to do this notwithstanding the direct and precise charge in plaintiff's petition that he never was the owner of the property and never had an interest in it. Under the pleadings and under the evidence, plaintiff's title must prevail. Lanfear vs. Harper, 13 An. 548.

It is claimed that even had this tax title been an outstanding one better than that upon which plaintiffs declare, it would not have been available to the defendant for the reason that he already held it by purchase when Mrs. Greene brought her suit against the Bundy heirs, and that instead of then advancing rights under it, adversely to the Greene title, he, on the contrary, consented to become Mrs. Greene's counsel, and as such endeavored to enforce her rights under the latter, and for that purpose had averred that John Greene and his residuary legatee, Mrs. Greene, owned the property and had been continuously in possession of the same since 1837. That the allegation of ownership in Mrs. Greene at the time of the institution of her suit was inconsistent with the contention that he was himself at that time the owner.

We are not called on to say whether this contention be well founded or not, but we think it right to say that in this case, had such an effect followed from the fact stated, it would have been the consequence not of any wrong—professional or otherwise—on the part of the defendant, but of a simple error of legal judgment. The duty which he owed his client has always been recognized and performed by him. He has never occupied a position antagonistic to her; on the contrary, his efforts have been constantly in the direction of assisting her. If the plaintiffs, through the fact alluded to, would have gained such a vantage ground, they would have done so not because defendant had failed in any duty to them, but through the application of a rule of law which enured to their benefit. Plaintiffs themselves say in their brief that he would have renounced in favor of the parties to the first suit any claim antagonistic to either of them. Defendant would have paid the penalty of the loss of his own rights by an attempt to serve his client.

Font et als vs. McConnell.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed.

Mr. Justice McEnery, absent, sick.

Mr. Justice Parlange takes no part.

### ON APPLICATION FOR A REHEARING.

BREAUX, J. The defendant in his application for a rehearing directs attention to the fact that the plaintiffs averred in their petition that prior to the institution of the suit the defendant informed them that he would not surrender the property sued for, nor cancel the sale from the auditor to him, upon payment by them to him of the sum paid by him to the auditor as the purchase price of the property.

He adds that this allegation was put at issue by his general denial and that no evidence was introduced by plaintiffs in support of their allegation.

| | |
|---|---:|
| The price paid was | $98 50 |
| Ten per cent | 9 85 |
| Total | $108 43 |

That this amount should be reimbursed and that plaintiffs should be required to pay this amount as a condition precedent to the annulling of the tax deed.

In the answer of the defendant to plaintiffs' petition he avers that he purchased the property involved in the suit from the auditor, and in support of his defence he introduced a copy of this act of sale.

The purpose was in thus introducing this act to prove title.

The issue by the pleadings was limited to a question of title of the defendant *vel non.*

No plea was made with the view of recovering the taxes paid in the event that the tax deed failed to sustain ownership in the defendant.

There was no want of tender averred and no plea whatever looking to the return of the money paid as made to appear by the tax deed.

The court therefore did not pass upon an issue not made.

This court has repeatedly held that the rights, such as those now claimed, may be pleaded in reconvention.

In the present condition of this suit, it is not possible to deter-

mine whether the taxes paid are taxes which the plaintiffs should reimburse.

The records do not disclose that they were the only taxes paid upon the property during the time for which the alleged payment was made, or that they are taxes for the payment of which the owner is responsible.

We would have no authority to recall and annul judgments rendered contradictorily, on the ground that plaintiff should have made a tender of the amount of taxes paid for the reason we have already given—that no plea of the want of tender has been made.

And no proof had been admitted to show that the taxes were taxes for which the plaintiff was responsible.

To be more explicit on this point, if the taxes, though assessed in the name of a third person not the owner, were the only taxes assessed on the property and the State received the amount as taxes due on the property (and no other taxes were assessed and paid), the property would have received a benefit for which the owner should account, although the tax deed was not valid.

We have not the facts before us to determine if such was the case in matter of the property in controversy in this suit.

The defendant's rights for taxes paid, whatever they may be, will be protected by reserving to him his right to sue for reimbursement for any amount he may have paid on account of taxes against the property enuring to the benefit of the plaintiffs.

This reservation having been made, our previous decree remains and rehearing is refused.