PROYOSTY, J.
This suit is founded on Act 101, p. 127, of 1898; that is to say, it is to quiet a tax title. The property in question consists of 11 sets or series of lots situated in different squares within the corporate limits of the city of New Orleans, but some distance from the built-up part of the city. It was adjudicated to the state successively in 1883, 1884, and 1885 for taxes of preceding years assessed to the then owner, Pelletier. It was then unfenced and in no one’s actual possession, being too swampy to be put to any use; but, it becoming dryer as the result of the better drainage of the territory adjacent to the city, the defendant obtained permission from Pelletier to use it for pasturage. And he had had this kind of possession of it for some years when in 1899 he obtained a deed to it from the heirs of Pelletier. He then fenced a part of it. It continued to be assessed to Pelletier after the tax sale, but the taxes were not' paid, and none were paid on it from 1869 to 1898, both inclusive. Defendant paid the taxes of 1899. Since then the property has been assessed to him, and he has paid all the taxes thus assessed. The following entry on the tax collector’s books shows what disposition was made of the taxes of 1869 to 1898, inclusive:
“Canceled by judgment of the first city court No. 646, dated June 15, 1900.”
The judgment here referred to was not offered in evidence, nor were the proceedings in which it was rendered; and we are not otherwise advised at whose instance it was rendered, nor contradictorily with whom, the probability being that it was at the instance of the defendant in this case, and contradictorily with the tax collector, as has been the strange practice in such cases. Plaintiff acquired title from one Odom, who had acquired in 1899, by private sale from the Auditor of the state, under the provisions of Act 80 of 1888. This act authorizes the Auditor to sell at private sale the lands acquired by the state for taxes of 1880 and subsequent years, after same have been advertised and offered for sale at public auction and no bid obtained sufficient to cover the amount of the taxes, penalties, etc., due on the property.
The defendant in his answer denied in general terms that the tax sale to the state was valid; but he did not set forth the grounds upon which he relied for showing the invalidity. In the answer to the appeal, however, he was more specific and alleged the ground of invalidity to be that the tax sale was not preceded by the notice of delinquency required by law.
This ground of nullity was not sought to be supported by any evidence on the trial and is not discussed in the brief. Hence we must assume that it is not seriously relied on in the present suit, and that we are not called upon to give it any further attention. The case, we may mention in passing, was not argued orally.
[1 ] The next defense is that by continuing to assess the property to Pelletier, and by afterwards assessing it to defendant and receiving payment from defendant of the taxes *1001 thus assessed, the state renounced the title acquired by her at the tax sale and estopped herself from ever setting it up against Pelletier or his assigns,- and that, moreover, the said tax title of the state was canceled by judgment of court, acquiesced in by the officers of the state, since they assessed the property to defendant and received payment of taxes from him.
[2, 3] This defense is without merit for the reason that the tax debtor, Pelletier, was not in actual possession of the property at the time of the tax sale to the state and of the continued assessment to him, and that the taxes for which the property was sold to the state 'have never been paid, but only canceled by a null and void judgment. See In re Veith, 130 La. 1108, 58 South. 899, where this was the decision of the court upon a similar state of facts. Judgments like the one here in question, purporting to cancel taxes for which property has been sold at tax sale to the state, are null and void if rendered contradictorily with the tax collector alone, for the reason that this officer is without authority to stand in judgment for the state in such matters. Citizens’ Bank v. Marr, 120 La. 238, 45 South. 115; In re Quaker Realty Co., 127 La. 208, 53 South. 526, and cases there cited. For that reason the said city court judgment is null, and, in so far as the effect should be sought to be attributed to it of setting aside the tax title of the state, it would be null for the further reason that said court was without jurisdiction -of cases involving title to real estate. See article 143 of the Constitution, fixing the jurisdiction of said court. So far as concerns the fact that, many years after the tax sale, the property was assessed to defendant and the taxes thus assessed were collected from him, this court has never held that such a proceeding could divest the tax title of the state. On the contrary, it has uniformly held the opposite. See, among other decisions to that effect, Slattery v. Heilperin & Leonard, 110 La. 95, 34 South. 139; Cordill v. Quaker Realty Co., 130 La. 933, 58 South. 821.
The next defense urged in the answer is that the Auditor was without authority to sell this property to plaintiff’s author in title, because the only law under which he could possibly have derived authority to sell at private sale lands acquired by the state at tax sale would have been Act 80 of 1888, and said act required that, before he could do so, he should have made an attempt to sell the property at public auction to the highest bidder after due advertisement, and failed to obtain a sufficient bid.
To that contention plaintiff replies that the property was duly advertised as required by said Act 80 of 1888, but that, if it was not, the defendant is without interest, and therefore without standing, to urge the point.
We do not think the evidence offered by plaintiff to show that this advertisement was made amounts to legal proof, though it brought moral conviction to the mind of the Auditor, who acted upon it, and has had the same effect upon our own minds. It seems that the only method of preserving the evidence of these advertisements having been made was by pasting in a book kept for that purpose in the office of the recorder of conveyances the clippings from the newspapers in which they were published; that there were three of these books, and that two of them have disappeared; and that many .of these advertisements were published in two certain newspapers which discontinued publication long ago, and whose files cannot be found. While it is true that no one can affirm that the said advertisement in question' in this suit was made, it is also true that no one can affirm that it was not made; all that can be said is that there is now no positive evidence of its having been made. But, inasmuch as by Act 80 of 1888 it was the imperative duty of the Auditor and tax collector to advertise at once for sale all the *1003 property that had been adjudicated to the state and not redeemed, the presumption, especially after the lapse of a quarter of a century, is that the officers did their duty, and that the property in question in this case was duly advertised along with the rest of the state property in the same category. Still that fact cannot be said to have been proved with legal certainty in tbis case, and hence we are compelled to pass to the consideration of tbe legal question whether defendant has a standing to provoke judicial inquiry into tbe matter.
[4] Manifestly be has not, if be has no pecuniary interest in tbe matter. The principle that one without pecuniary interest has no judicial standing runs all through our jurisprudence; it is founded upon simple plain common sense; it is formulated in article 15 of tbe Code of Practice, reading, “An action can only be brought by one having a real and actual interest which he pursues”; and it has been enforced by tbis court in a very large number of cases, and among others in eases where parties, whose title had been divested by a tax sale, were still seeking to litigate with reference to the property. It may be well to cite some of these cases.
In Morrison v. Larkin, Tax Collector, 26 La. Ann. 699, the syllabus reads:
“The plaintiff contends that the collector’s authority does not extend to the sale of lands forfeited to the state as Ms were, under sections 67, 68, and 69, of Act 42 of 1871. The plaintiff cannot assume this position without putting himself out of court, because, if his lands were forfeited to the state in pursuance of said act, the only right remaining to him is the right of redemption, under section 69 of said act. and, until he chooses to exercise this right he has no more interest in said lands than any other individual.”
In George v. Cole, 109 La. 823, 33 South. 787, the court said:
“If it be true that the title of the plaintiff’s ancestors was divested by forfeiture or adjudication as alleged and vested in the state, it can make no difference to plaintiff whether the proceedings by which the state subsequently parted with the title so acquired was legally conducted or not.”
“The title having been originally divested as before mentioned and gone into other hands, the plaintiffs have no interest to question the title under which the defendant owns.”
In the case of Surget v. Newman, 43 La. Ann. 873, 9 South. 561, the court said:
“The parties who permit their property to be forfeited and vested in the state have no interest in its future disposition by the state.”
In Woodfolk v. Witkowski, 120 La. 496, 45 South. 403, the court said:
“We direct our attention at once to the original tax sale made in 1873, at which Colin C. Campbell became adjudicatee_, for, if by that Woodfolk was divested of his ownership and possession, it was a matter of no concern to the plaintiff how many simulated acts (if any) have been executed since.”
In Gouax v. Beaullieu, 123 La. 695, 49 South. 289, the court said:
“If the proceedings which resulted in an adjudication to the state must be held legal until attacked by direct pleadings, the property at the time of sale of Mrs. Schlater belonged to it, and whatever illegality there may have been in the subsequent tax proceedings by which the ownership of the state was sought to be divested was a matter of concern to the state and not to the plaintiff.”
In Smith v. Crandall, 118 La. 1055, 43 South. 700, the court said:
“The question of the validity of land patents is one between the state and the patentees or their assigns. Plaintiffs had no inchoate rights of any kind in or to the lands granted at the date of- the issuance of the patents. Plaintiffs, therefore, have no standing to question the validity of the patents on the ground of the alleged improper or illegal location of the scrip issue to John McEnery.”
A striking illustration of tbe operation of the íu-inciple that a party without pecuniary interest has no judicial standing is found in the twin cases of West v. Negrotto, 48 La. Ann. 922, 19 South. 819, and West v. Negrotto, 52 La. Ann. 381, 27 South. 75-two suits between the same parties and involving tbe same facts. West, whose property had been sold to the state at tax sale, brought a petitory action based upon his *1005 primordial title, which had been divested by the sale to the state; and, when Negrotto, who had acquired the tax title of the state, set up this tax title, West sought to contest the validity of the sale from the state to Ne-grotto. The court refused to listen to him and said that:
“The only effect of this noncompliance would be to leave Negrotto without a title, but to leave the state itself as the owner of the property under the adjudication made to it.”
But, after Negrotto had made his purchase from the state, the property had been sold to the city for city taxes, and West had redeemed it from the city and received a certificate of redemption. Basing himself on this certificate of redemption, West brought the second suit, relying this time, not on his primordial title, but upon the title which the city had acquired at the tax sale made to ner for her taxes. Negrotto, in his turn, sought to contest the validity of the transfer made by the city to West on the ground that it was merely a redemption and not a sale, and that, such as it was, the officers of the city had been without authority to make it. The court administered to him the same medicine he had caused to be administered to West in the first suit. It said:
“Where an outstanding title in some third person is set up by the defendant in a petitory action, and plaintiff produces a title from that person himself, this title must stand until it be set aside by the party entitled to have the sale set aside.”
Indeed, so obviously true is it that a party whose property has been transferred to another by a valid sale, whether private or public, amicable or forced, has no pecuniary interest, and is therefore without standing to provoke judicial inquiry into the validity of any transfer such other person may have made of the property to a third person, that defendant would hardly contest the proposition, and, as we understand, is not doing so, but is contending that, because of the peculiar provisions of said Act 80 of 1888, the former owner of property adjudicated to the state at tax sale has an interest in questioning the validity of a transfer made by the auditor of such property to some third person.
Upon this exact point this court has had occasion to pass three times. In Breaux v. Negrotto, 43 La. Ann. 426, 9 South. 502, and Reinach v. Duplantier, 46 La. Ann. 151, 15 South. 13, it held that such former owner had no such interest and therefore was without standing. In Graham v. Murphy, 126 La. 210, 52 South. 277, it held the opposite.
In Breaux v. Negrotto, 43 La. Ann. 426, 9 South. 502, the contention was identically the one made in the present case, namely, that the Auditor had not advertised the property for sale, and had been therefore without authority, under said Act 80 of 1888, to sell the property as he had done. The only difference between that ease and the one at bar is that in it there had been an insufficient advertisement, whereas in the one at bar the contention is that there was none at all; a difference upon which a legal distinction cannot be based, since an insufficient advertisement is no better in law than none at all. The court, in disposing of the ease, said :
“If the adjudication was legal and valid, the time for redemption having passed, the divestiture of the title of plaintiff was complete. He has no interest therefore in attacking Act 80 of 1888. It is immaterial to him in what manner the state disposed of her property.”
In Reinach v. Duplantier, 46 La. Ann. 151, 15 South. 13, the property had been adjudicated to the state at tax sale under Act 96 of 1877 for taxes of 1877 and 1S78, and had been sold by the state to the plaintiff under said Act 80 of 18S8. One of the contentions was that the said Act 80 of 1888 applied only to property acquired by the state for taxes of 1880 and subsequent years, and that therefore the tax collector had had no authority *1007 to make the sale to plaintiff. ■ The court disposed of the case by saying:
“The defendant is without interest to question the legality of the title conveyed under Act 80 of 1888.”
It will be noted that the court assumed in that case that the sale had been made by the tax collector without authority, but held that nevertheless the defendant was without interest to provoke judicial inquiry into the matter.
The Murphy Case was tried upon an admitted statement of facts which showed that the adjudication to the state had been null and void. But the plaintiff contended that the defendants were precluded from invoking this nullity because the said Act 80 of 1888 made the Auditor’s deed conclusive evidence of the validity of the adjudication to the state. To this the defendant replied that a condition precedent to this Auditor’s deed being thus conclusive, and a condition precedent to the Auditor’s having authority to make the sale at all, was, under the express terms of that statute, that there should have been the publication of the advertisement of the property, which should serve as a notice or citation to all parties who might be interested in the property. It is evident that a deed which is made conclusive only after citation of the party in interest cannot be conclusive in the absence of such citation, and the court, by simply so holding, might have fully justified the decree in this Murphy Case. But there is no denying that the court went very much further than this and held broadly that the former owner may provoke judicial inquiry into the validity of sales made by the Auditor under said Act SO of 1888; that is to say, may do so in all cases, not excepting those in which the validity of the adjudication to the state is not contested.
[5] As thus broadly stated, the doctrine is counter to the decisions in the Duplantier and Negrotto Oases, supra, and cannot be justified, and must therefore be to that extent recalled or modified, and in that connection it must be remembered that only seldom can a single decision serve as a basis for stare decisis, and never where opposed to previous decisions, and especially where such previous decisions are overruled without being referred to, as if having escaped altogether the attention of the court.
“A single decision is not necessarily binding." 11 Cyc. 745. “More than one decision,” said Judge Martin in Smith v. Smith, 13 La. 441, “is required to settle the jurisprudence on any given point or question of law.” “We have often said,” said this court in Lagrange v. Barré, 11 Rob. 302, “it requires more than one decision to establish a'jurisprudence.”
And in Griffin v. His Creditors, 6 Rob. 216-224:
“The rule of stare decisis is entitled to great weight and respect when there has been, on a point of law, a series ot adjudications all to the same effect; but when we are presented with a single decision, which we believe to have been inadvisedly made, it is incumbent on us to overrule it, if we entertain a different opinion on the question submitted.”
From 26 A. & E. E. of L. 167 and 168, we quote as follows:
“Distinction has also been drawn in the application of the doctrine of stare decisis where only one decision is relied upon as establishing the doctrine. For a variety of reasons a series of decisions will be given more weight than a single decision. There is less likelihood of error; any points, decisions, or statutes overlooked in the one may be considered in subsequent cases; the probability of an injurious effect on property rights is less where there is a single' decision than where there is a series.”
“When a question involving important public or private rights extending through all coming time has been passed upon on a single occasion, and the decision can in no just sense be said to have been acquiesced in, it is not only the right, but the duty, of the courts, when properly called upon, to re-examine the questions involved and again subject them to judicial scrutiny. Nor is the doctrine applied to prevent the revising or overruling of a single decision upon a disputed or doubtful point, or of one in which the point in controversy does not appear to have been thoroughly investigated, or to a decision creating a rule of- law for a case which has not been subsequently applied to other cases, or to a single judgment followed in no other case, rendered by a bare majority of the *1009 court, and construing the statute in a manner which is palpably erroneous and contrary to public policy as tending to foster and promote a monopoly, or where the decision was made without notice of the statute, and, in effect, sets the statute aside.
“It is to be considered, in determining the weight to be given to a single decision, whether or not it is a reversal or overruling of any prior case. A ease simjfly establishing a point, without in any way interfering with or contradicting any previous case, would have_ more weight, of course, than one which was in conflict with previous decisions or dicta. So where the points involved were decided in opposition to well-established decisions which should have governed, and injustice or hardship will result from adhering to the decision, the courts will not apply the rule of stare decisis. Or where there has been an erroneous decision in one case, and the doctrine of all the cases which have preceded and followed it is contrary in reference to the matters decided, to the doctrine of that case, it will not be upheld as stare decisis, although it may never have been expressly overruled.”
In proceeding to discuss this Murphy decision, it will conduce to clearness if we establish definitely what the court did not mean to hold, and did not in fact hold in it.
The court did not mean to controvert or hold adversely to the proposition that a party without pecuniary interest is without standing to litigate, and the court did not in fact do so. That proposition, as already stated, runs through our entire jurisprudence, is explicitly formulated in the Code of Practice, and is as applicable to a former owner of property sold at tax sale as to anybody else, as is evidenced by a large number of decisions of this court, a few of which are hereinabove mentioned.
Again, the court did not mean to hold, and did not hold, that a valid tax sale, after the delay for redemption has expired, is not as efficacious as any other kind of sale in divorcing the owner from all interest in the property sold and transferring this interest entirely, completely, and absolutely to the purchaser, be this purchaser the state or an ordinary person. To hold counter to this would be to go counter to the plainest principles of the law of sales, counter to several express statutes, and counter to that host of decisions where former owners of property sold at tax sale have unsuccessfully sought to combat the tax title.
Necessarily, therefore, what the court meant to hold and did bold in this Murphy Case was this: That the said statute 80 of 1888 has reinvested the former owner with an interest in the property, and thereby furnished him with a standing for provoking judicial inquiry into whether the sale made by the Auditor under said statute was preceded or not by the advertisement required by said statute. And that this was what the court meant to hold and did hold appears clearly from the reasons assigned by the court for the decision. These are, as follows:
“The evident object of the statute was to afford to the owner of the property an opportunity to purchase at the second adjudication, and thereby practically redeeming the property, and, on failure to avail himself of this opportunity, to oppose the first adjudication, or to purchase the property then, and thereafter to close the door to further contest. * * * Independently of what has been said, we think that the defendants have a direct interest in questioning the rights which plaintiff advanced in this suit. He has judicially admitted that he is out of possession, and that a writ of possession is necessary to perfect such rights as he may have' in the premises. By citing the defendants, he has recognized that they have an interest in the suit. * * * Plaintiff cannot call upon defendants to contest his claim, and, when they do contest, deny that they have any interest in the subject-matter of the litigation.”
Thus the court gives two reasons why the defendant has a judicial standing in a suit like the present: First, because .said Act 80 of 1888 confers an interest upon him; and, second, because he, being called upon to defend himself, has a right to do so.
[6] This second reason, it will be noticed, was only given by the court as an additional reason — a sort of make-weight, or “lagniappe,” as it were. It is manifestly merely specious and without merit. The statute under which the plaintiff proceeds in such cases requires him to cite the former owner. This former *1011 owner is called upon to show what title he himself may claim to have, not what title the vendor of the plaintiff may claim to have. Indeed, this point has been so thoroughly and frequently discussed in former decisions of this court that we will not rediscuss it here, but content ourselves with reproducing what this court, speaking through the same organ as in this Murphy Oase, Justice Nicholls, had occasion to say about it in the case of West v. Negrotto, 52 La. Ann. 381, 27 South. 75, already hereinabove mentioned. Said the court:
“There is no doubt as to the correctness of the proposition that in a petitory action the plaintiff must succeed on the strength of his own title, nor of the proposition that the defendant in a petitory action can set up, as against plaintiff’s demand, the existence of an outstanding title to the property in a third person. In the latter case, however, the outstanding title must be a valid, legal, subsisting title, better than that of the plaintiff (Mays v. Witkowski, 46 La. Ann. 1475, 16 South. 478); and in the former case, if plaintiff’s title be weak, it must, in order to entitle defendant to question it, be a weakness resulting from some radical, and not from some mere relative, nullity. Hennen’s Dig. p. 114, No. 2; Scott v. Briscoe, 37 La. Ann. 178; Bernard v. Noel, 45 La. Ann. 1137, 13 South. 737. Now the weakness which the defendant sets up is in the existence of an outstanding title to the property in the city; but the city, whose title is thus thrown forward, has itself undertaken to transfer the same to the plaintiff. Defendant says that it is true, but the city officials were without authority to make the transfer. In other words, the defendant, without any claim himself to the city’s transferred title, is seeking to champion collaterally in this proceeding its rights to the ownership of the property. Where an outstanding title in some third person is set up by the defendant in a petitory action, and plaintiff produces a title from that person himself, this title must stand until it be set aside by the party entitled to have the sale set aside. Scott v. Briscoe, 37 La. Ann. 178; Bernard v. Noel, 45 La. Ann. 1136, 13 South. 737; Font v. McConnell, 46 La. Ann. 223, 14 South. 522. It may be that the city would be able to contest the right and authority of the city council to transfer this property, but it has manifestly no intention to do so, and certainly would not before tendering back to West the money received from him.”
The same thing can be said of the state in the present ease that was there said of the city, namely, that it may he that the state would be able to contest the right and authority of the Auditor to transfer this property, but it has manifestly no intention of doing so. And we may add that in the present case, while there is no sufficient legal proof of this advertisement having been made, there is enough moral proof of it to deter the state from ever raising any question in the matter.
[7] We come, then, to the first of the reasons assigned by the court in this Murphy Oase, namely, that the object of said Act 80 of 1888 was to reinvest the former owner with an interest of some kind in the property.
Upon the question of whether such was or not the object of said statute, and whether it has or not that effect, said statute must be left to speak for itself.
It is too lengthy for the verbatim reproduction here even of its relevant parts. Even of these relevant parts, therefore, we must content ourselves with giving a mere summary only. In this summary we shall reproduce the exact language of the act in all those parts where some importance may have to be attached to the language itself. The parts thus literally reproduced will naturally be designated by quotation marks.
Section 1 provides that “it is hereby made the imperative duty of each tax collector of the state throughout the state to prepare within two months after the expiration of the year within which property must be redeemed or as soon thereafter as possible, a complete list of all the immovable property bid in for and adjudicated to the state for taxes for the year 18S0 and subsequent years and not redeemed within the time prescribed by law, which list shall be transmitted to the Auditor” for comparison with the records of his office, and, after having been corrected and approved by the Auditor, to he returned to the tax collector, who shall proceed at once to advertise for sale for cash to the *1013 highest bidder the property appearing upon ■said list; “said advertisement shall contain only the name of the party in whose name the property was adjudicated to the state, or ■only the name of the person who claims to be owner thereof,” and only “a condensed description” of the property, “and shall be published during thirty days,” and “shall be full and complete notice to all persons and parties in any wise interested in said property, and no other notice shall be required, .and the same shall operate as a complete citation.” Section 1 also provides that:
“The assessment for each respective year for which property has been adjudicated to the state for unpaid taxes is hereby declared to be legal and binding in every respect on parties who may have been interested in said property, and the titles of the state, as acquired under said adjudication, are hereby declared good and valid.”
Section 2 prescribes what is the lowest bid that may be accepted.
Section 3 provides that “when any property sold to the state for unpaid taxes has been once advertised and offered for sale in accordance with the provisions of this act and has failed to sell, then the Auditor shall be authorized” to sell same at private sale.
Section 4, that a deed of sale shall be executed in favor of the purchaser—
“which deed shall be prima facie evidence of the following facts:
“1. That the property conveyed in said deed was subject to taxation at the time of the assessment thereof.
“2. That none of the taxes for which said property was adjudicated to the state were paid.
“3. That the property was not redeemed in the time prescribed by law.
“And said deed shall be conclusive evidence of the following facts:
“1. That the property was listed and assessed .according to law.
“2. That the taxes were levied according to law.
“3. That the property described in said deed was adjudicated to the state according to law.
“4. That the property was advertised according to law.
“5. That the property was adjudicated and sold to the purchaser as stated in said deed.
“6. That all the prerequisites of the law were complied with by all the officers from the listing and assessment of said property inclusive up to and including the execution and registry of the deed to the purchaser, and duly certified copies of said deeds shall be full proof of all contained therein; the proof of payment of only a portion of the taxes for which the property was adjudicated to the state, shall not in any manner affect the validity of the sale to the purchaser,” etc., etc.
Section 5:
“That all sales under this act shall vest in the purchaser an absolute and perfect title to the property conveyed in the deed of sale, without any claim thereto by any former owner and free of all mortgages, liens, privileges and incumbrances whatsoever.”
The remaining sections have no relevancy to tbe present case.
If the intention of the framers of this statute was to render defeasible in any way tbe absolute title wbicb the state holds to the class of property mentioned in it, or to attach any conditions to the unconditional title of the state to said property, or, in other words, to reinvest the former owners of this property with any right to, or interest in, it, all we can say is that these framers were very successful in not expressing that object, but in expressing the very opposite. The operation of tbe statute is carefully and studiously restricted to property to which tbe state has an absolute and indefeasible title — that is to say, to property “wbicb has not been redeemed within the time prescribed by law” — and tbe title of the state, very far from being sought to be in any way rendered defeasible or conditional or, in a word, weakened, is, on the contrary, sought to be confirmed, or strengthened, or clinched, as far as in the power of the Legislature lies, by the following express provision:
“The assessment for each respective year for which property has been adjudicated to the state for unpaid taxes is hereby declared to be legal and binding in every respect on parties who may have been interested in said property, and the titles of the state, as acquired under said adjudication, are hereby declared good and valid.”
*1015 Very far from seeking to extend any favors to the former owner, this statute, on the contrary, seeks by its express terms to cut off effectually and completely, so far as in the power of the Legislature lies any lingering interest he might have to contest the title of the state. Very far from seeking to favor him in any way by affording him an opportunity to repurchase the property, as supposed by the court in this Murphy Case, this statute expressly requires the property to be sold at public auction to the highest bidder, thereby placing the former owner upon a footing of exact equality with every other member of the public in the opportunity to purchase the property.
There is no denying that this statute does afford the former owner an opportunity to purchase the property; but in like manner exactly, and precisely to the same extent, it affords the same opportunity to every other member of the public, whence it follows that, if the affording of this opportunity to purchase can be said to invest this former owner with such an interest in the property as can serve as a basis for a right of action with reference to the property, so in like manner it affords every other member of the public a similar right of action, and no one, we imagine, will contend that any and every member of the public has such an interest as will afford a standing for provoking judicial inquiry into the manner in which the Auditor of the state has disposed of any part of the property referred to in said statute.
There is no uncertainty as to what was the object and purpose of said statute. It was to realize much needed money for the state by selling these lands, and to realize •as much as possible by advertising for 30 days and selling to the highest bidder, and to realize it as soon as possible by making it the imperative duty of the tax collectors to proceed to make this advertisement within two months from the passage of the act. In furtherance of this object, the distrust of tax titles known to pervade the public mind is sought to be removed, as far as in the power of the Legislature lies, by first declaring that the title of the state is good and perfect, and then declaring that the publication of the advertisement shall be notice and citation to all persons who may have an interest in the property, and all such interest shall be absolutely cut off by the auction sale. The Legislature realized that it did not have the power to cut off, by its mere ipse dixit, all right third persons might have in the property, hence it provided that the publication of the advertisement should be notice or citation to all persons interested— a sort of monition proceeding.
The former owner is allowed the full benefit of all that said statute provides in his favor, if, in the absence of the publication of advertisement provided for in said statute, he. is allowed the opportunity which such publication would have afforded him to contest the tax title of the state on those grounds of nullity which the Legislature could not cure by a mere exercise of its legislative power.
In a word, the former owner may, in the absence of such advertisement, and if not cut off by prescription, contest the validity of the title of the state on such grounds of nullity as the Legislature could not cure by the exercise of its legislative power, and may, by destroying the state’s title, destroy the title conveyed by the state, — sublato fundamento cadit opus; but he cuts off his connection with the property and puts himself out of court by conceding the validity of the state’s title.
[8] There is nothing in the record in the-present case to satisfy us that the defendant may not have had good grounds for assailing the validity of the state’s title and been deterred from doing so by confidence reposed in the Murphy Case, as being the last ex *1017 pression of this court upon the point there in question. We deem it just, therefore, that the opportunity should be afforded defendant to make this contest, and that the case should be remanded for that purpose, with leave, if necessary, to amend pleadings, and with leave to plaintiff at the same time to produce further evidence, if he can, touching the publication of the advertisement.
The judgment appealed from is set aside, and this case is remanded for further trial' in accordance with the views hereinabove expressed, and with leave to amend pleadings, if necessary, and offer further evidence.
BREAUX, C. J., dissents.