## No. 727

### First Circuit

---

## SEGUIN, ET AL., v. SEGUIN, ET AL.

---

(March 2, 1926. Opinion and Decree)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Appeal—Par. 625.**

The finding of the trial court that an act of sale with the right of redemption which was not redeemed was not a simulation, but made in good faith being eminently correct is affirmed.

2. **Louisiana Digest—Appeal—Par. 625.**

The finding of the trial court that an act of sale was not superinduced by a misrepresentation and fraud and that there was a sufficient consideration, being eminently correct, is affirmed.

3. **Louisiana Digest—Appeal—Par. 568.**

Where there was not sufficient evidence to enable the district judge nor the Court of Appeal to determine just what property was contained in the estate of the deceased, the Court of Appeal will not give judgment upon the matter.

Appeal from the Parish of West Baton Rouge, Hon. Wm. C. Carruth, Judge.

Suit by Ulysses J. Seguin, et al., against Arano Seguin, et al. There was judgment for defendants and plaintiffs appealed.

Judgment affirmed.

Benton and Benton and Lawrence W. Brooks, of Baton Rouge, attorneys for plaintiffs, appellants.

Justin C. Daspit, of Baton Rouge, attorney for defendants, appellees.

ELLIOTT, J.    Action to have an act in the form of a sale with the right of redemption, decreed to be a mortgage and another act, decreed to be null and void for want of consent on part of vendor; alternatively to have been obtained by fraud and misrepresentation and that no valid consideration was paid.

Augustin Seguin acquired from James W. Burbridge on January 24, 1877, a certain tract of land situated in the Parish of West Baton Rouge, containing eighteen arpents more or less, being lot No. two of the Burbridge subdivision, situated in the rear of the town of Sunnyside.

On June 9, 1893, Augustin Seguin executed an act in favor of Belizaire Lavinge for eight arpents more or less, part of the tract acquired by him from Burbridge as above said.   The act from Augustin Seguin to Belizaire Lavigne is in authentic form and purports to be a sale for the price and sum of $104.00 with the stipulation "The vendor, his heirs or assigns, shall have the right of purchasing back the property this day transferred, at any time before the first day of July, 1896, by reimbursing the price paid with eight per cent interest thereon to the day of redemption as also, all taxes paid and other cost that the present purchaser may have incurred."

On December 3, 1897, Belizaire Lavigne executed an act in favor of Arano Seguin calling for the same property.   The act in favor of Arano Seguin is in authentic form and purports to be a sale by title duly warranted for the price and sum of $165.00.

On May 7, 1914, an act purports to have been executed by Augustin Seguin in favor of Arano Seguin, for another part of the tract which Augustin Seguin had acquired from Burbridge as above stated.   The land called for by this act measures 241 feet front on the Texas & Pacific Railroad right-of-way by four arpents in depth and adjoins the tract called for by his act in favor of Belizaire Lavigne.   This act is in authentic form and purports to be a sale for the price and sum of $400.00 cash.

On March 19, 1919, Augustin Seguin departed this life intestate, leaving Mrs. Seguin his widow in community and seven children, all born of their marriage his sole heirs.

Mrs. Olivia Seguin, his widow in community, and Ulysses, Effie, wife of T. F. Higginbotham, Teaulbert, Alcee, Aline, wife of Louis Altazin and Olivian, wife of Ernest Druhlet, six of his seven children brought this suit against Arano, the other son, the purpose and object of which is to have the two tracts of land claimed by Arano as above stated decreed to belong to the estate left by Augustin Seguin, deceased. Arano Seguin had sold the greater part of both tracts previous to the institution of the suit.   His vendees were made parties *defendant, but on exceptions of misjoinder* filed by them, were dismissed from the case, leaving Arano as the only defendant before the court.   The case was then tried on the merits against Arano; resulting in a judgment in his favor. The plaintiffs have appealed.   The judgment dismissing the other original parties defendant was not appealed from and is therefore final.

Mrs. Olivia Seguin, widow of Augustin Seguin; and Mrs. Olivia Druhlet signed the contract with the attorneys authorizing this suit; but on cross-examination by defendant, they gave testimony of such character that they can not be regarded as plaintiffs, wanting judgment against Arano as prayed for in their petition, but it is very different with the other plaintiffs. They very firmly urge their demand, that the act from their father to Belizaire Lavigne decreed to have been, when executed, in fact a mortgage, securing a loan and to have the act from Belizaire Lavigne to Arano Seguin decreed to have been in fact, but a payment of the loan and to have, in that way operated to replace the ownership of the land in the community estate left by their father. Belizaire Lavigne is not a party to this suit, but Arano holds under him.

We can therefore deal with him as to that part of the two tracts which he still claims to own and can under the pleadings require him to account to plaintiffs for the proceeds of what he has sold, in case we find that he did not become the owner under the titles which he advances in his answer.

Under the law and jurisprudence of this state it is settled that a redemption sale for an inadequate price, when the vendor remains in possession will not be regarded as a redemption sale, but as a pignorative or security contract and effect as such given to the act. At the time the act from Augustin Seguin to Belizaire Lavigne was passed Arano Seguin was between 16 and 17 years of age and he is the eldest of the living children. Arano, Ulysses and the other plaintiffs and two witnesses who testified in behalf of the plaintiffs, thought the act was a mortgage. The evidence indicates that Arano did not know that the act was in the form of a redemption sale, until after the right of redemption had expired. The act from Belizaire to him was passed one year, four months and 24 days after that time. This fact of first belief on the part of Arano, the price named in the act from Augustin Seguin to Belizaire Lavigne, the fact that the amount named as the price in the act from Belizaire Lavigne to Arano Seguin corresponds closely to the sum named in the act from his father to Belizaire Lavigne as the price of redemption and the fact that plaintiffs' cultivated part of the land called for by the act for several years immediately following the execution of the act, is urged by the plaintiffs as showing that the act from their father to Belizaire Lavigne was a mere security for a loan. The record also contains an act from Augustin Seguin to Jules Doiron dated April 10, 1879, showing that their father sold an arpent of the tract which he had acquired from Burbridge for $100.00 cash. Ulysses and his brother Teaulbert and two witnesses testify that the act from Augustin Seguin to Belizaire Lavigne was a mortgage and that Belizaire Lavigne never took possession of the property. These plaintiffs and witnesses were however too young at that time to have had any definite knowledge as to the intent and purpose of Augustin Seguin and Belizaire Lavigne in the matter of said act. At the very best, all that can be said about their testimony is that such was their opinion and belief and that formed in after years. Not one of them ever heard Belizaire Lavigne speak of it as a mortgage; save one of the witnesses, himself young at the time, says that on one occasion he heard Belizaire Lavigne refer to the matter saying that he had good security for what he had put out on it.

Plaintiffs' testimony, that the property was never delivered to Belizaire Lavigne is also no more than their opinion formed in after years.

The price which their father received for the arpent which he sold to Doiron in 1879 supports their belief; but this arpent might have some special value, due to its situation. It is said in the title whereby it was sold, that it fronts on a railroad.

The price named in the act from plaintiffs' father to Belizaire Lavigne and that named in the act from Belizaire Lavigne to Arano Seguin, together with the above mentioned facts makes reasonable plaintiffs' belief, that the act from their father to Belizaire Lavigne was merely for the purpose of securing a loan in a time of need; but their father's course of conduct and that of Belizaire Lavigne and other facts and circumstances support the contentions of defendant. When Augustin Seguin bought the eighteen arpents more or less in January, 1877, he paid $750.00 for the tract. Whether there was a house on it or not at the time, the evidence does not show; but there was no house on that part covered by the act from their father to Belizaire Lavigne and same was the least valuable part of the original tract. At the time that act from their father to Belizaire Lavigne was passed, their father was sick, confined to his bed or practically so and unable to support his family. He remained a feeble invalid for the balance of his life, about 33 years; unable to work and hard pressed financially.

Following the execution of the act, his children cultivated part of the land for several years, but Maurice Lavigne also cultivated part and the evidence does not show whether Maurice Lavigne did so by the authority of their father or of his brother Belizaire Lavigne. Plaintiffs may have cultivated part of it by the sufferance of Belizaire Lavigne, without having been aware of it.

The implication which plaintiffs contend for as a result of this evidence, is offset by the construction which Belizaire Lavigne placed on the act as indicated by his unconditional and warranted title to Arano Seguin after the right to redeem had expired.

Mrs. Olivia Seguin, widow of Augustin Seguin was called by defendant for cross-examination and could have testified for the plaintiff, but she was not asked if she knew anything about the intention of her husband in the act to Belizaire Lavigne. Under the terms of the act Augustin Seguin could have sold his right to redeem; therefore if the act was a mere security for a loan and the land worth appreciably more than the amount due, he might have sold his right, paid the loan and saved the balance for his family. Augustin Seguin was mentally able to attend to business at the time Belizaire Lavigne executed the title in favor of Arano. If the act from him to Belizaire had merely secured a loan of the amount named in the act, Belizaire would not have likely sold the land as he did to Arano without consulting his father and nothing indicates that the father was consulted by either.

Arano lived with his father at the time and plaintfiis contend that their father was under his influence; but no reason appears why Belizaire Lavigne should have executed the act in favor of Arano without speaking to the father and ascertaining his wishes; if he had felt that he had any rights and if he held the title only as

security for a loan, he knew that Augustin Seguin did have rights in the property.

The act from Belizaire to Arano was passed more than eleven years before the father's death. This suit was not filed until about six years after his death and more than thirty years after Augustin Seguin had executed the act.

The preponderance of the fact and circumstances indicates that the act from Augustin Seguin to Belizaire Lavigne was what it purports to be; a sale with the right of redemption. The property was not redeemed. Therefore Belizaire Lavigne had the right to sell or do with it as he pleased and plaintiffs have no interest in questioning his title to Arano. C. P. Art. 15; Quaker Realty Co. vs. Labasse, 131 La. 997, 60 South. 661.

With reference to the act from Augustin to Arano Seguin, plaintiffs allege that their father did not sign nor consent to it and alternatively that Arano induced him to sign it by misrepresentation and fraud and that no actual consideration was paid for the property. That if a consideration appeared, it was less than one-third the value of the property and they pray in that contingency that the sale be set aside for lesion beyond moiety. Arano Seguin in answer to these allegations alleges that his father signed and consented to the act, that it is valid and based on sufficient consideration. In a supplemental answer he avers that the consideration was not cash, but a house built for his father during the year of 1913. That he furnished the materials and labor and that his father executed the act in payment of the house.

This suit was not filed until about six years after the father's death, consequently if Augustin Seguin consented to and signed the act, the prescription of four years pleaded by defendant against plaintiffs' claim of lesion beyond moiety is good.

It is said in the act "the vendor not knowing how to write, makes his mark". The act bears a mark, purporting to be that of Augustin Seguin. It is admitted in the note of testimony that the above mentioned clause and the names of the witnesses are written in the body of the act with black ink, while the parties, witnesses and officer signed with purple ink.

The officer deputy clerk and recorder before whom the act was passed, had been dead for several years at the time of the trial. If he had been living, we presume that this difference in the ink used in writing the clause and names of the witnesses in the body of the act, and that used in signing it, would be satisfactorily explained.

Mrs. Augustin Seguin and Mrs. Olivia Druhlet, plaintiffs, and Arano Seguin, defendant, testify that Augustin Seguin signed the act pursuant to previous agreement. The evidence shows that Augustin Seguin knew how to write well enough to sign his name; but at the time, he could not see well and trembled badly. The evidence indicates that he was physically unable to write his name at the time the act was signed. The two witnesses Archie Hebert and Louis Altazin were both living at the time of the trial. Archie Hebert was not called to testify on the subject and no satisfactory reason appears why it was not done. Louis Altazin testified that he did not see Augustin Seguin sign the act; but that Augustin Seguin saw witnesses sign it. The widow, a sister and defendant says he signed it. The pre-

ponderance of the evidence on the subject establishes that he consented to and signed the act, understanding what he did.

The evidence shows that the first house in which Augustin Seguin lived with his family was torn down; why, the evidence does not satisfactorily show.

This took place some 9 or 10 years previous to the father's death. It is clear that a house for the family had to be provided. The evidence is to the effect that Arano secured a house for his father and mother and 2 or 3 of the youngest children and paid the rent for about three years. The father's physical condition has been heretofore stated. Ulysses and the other sons helped, but Arano took the principal part in the family support. The mother, a sister Mrs. Druhlet, and Arano defendant, testify that the father and mother requested Arano to build them a house in which to live on his father's land, the father promising to pay him by making him a title to part of his land. Arano built the house pursuant to this arrangement during the year 1913. The new house was built in the place where the old house had stood. Some eight or twelve months after it was built the father, while living in it with his family, executed the title in question for the purpose of paying Arano for building the house. The new house evidently cost $400.00 or more and was worth that sum and more. The father's condition and the needs of the family considered, the arrangement was reasonable and proper.

We are satisfied from the evidence that at the time it was done the house and the land were fair equivalents for each other in the matter of value. The house is on a parcel of land which remained the property of the father and still belongs to his estate. Plaintiffs' charge of misrepresentation, fraud, want of consent, inadequate consideration, etc., is not supported by the evidence. Plaintiff's demand in regard to the act in question was properly refused. The plaintiffs have furnished us with a brief very carefully prepared and in which numerous authorities are cited. The authorities would govern a case, coming within their spirit and contemplation; but they do not apply to the facts of the present case and it is not advisable to protract this opinion for the purpose of showing the difference between them and the case in hand.

The plaintiffs pray that the widow and heirs of Augustin Seguin be recognized and sent into possession of his estate. The two tracts of land claimed by Arano Seguin and involved in this case, do not form part of his estate.

The district judge rejected plaintiffs' demand as to the two tracts of land claimed of Arano Seguin, described in plaintiffs' petition; but did not act on plaintiffs' demand as to the property left by Augustin Seguin at his death. The evidence was not sufficient to enable the district judge, nor does it enable us to say what property was left by Augustin Seguin. For that reason we will not try to act on the matter but will leave the question open for the determination of lower court contradictorily with the tax collector.

For the above reasons the judgment appealed from refusing and rejecting plaintiffs' demands against Arano Seguin as to the two tracts of land claimed by him is affirmed.

The right of Mrs. Olivia Seguin widow in community of Augustin Seguin and of

tne other plaintiffs and of Arano Seguin to the estate left in the name of Augustin Seguin. is recognized and reserved to each without prejudice; the property to be ascertained by the district judge in due course.

The plaintiffs and appellants to pay the cost in both courts.